Mario ALANIZ, Jr., Ludivina Alaniz Hernandez, Rodolfo Alaniz; Ludivina Alaniz Hernandez, as Next Best Friend of Her Minor Sisters, Judith Alaniz & Diana Alaniz; Individually, Jointly & as Representatives of the Estates of Mario Alaniz, Deceased, and Ludivina Alaniz, Deceased; Elizabeth Sifuentes, and Elisa Sifuentes, Appellants

v.

REBELLO FOOD & BEVERAGE, L.L.C., SRK Management, Inc. d/b/a Howard Johnson Suites, Kirit Patel, and Howard Johnson International, Inc., Appellees.

No. 14–03–00478–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Feb. 17, 2005.

Eduardo Lucio, Dallas, for appellants.

John B. Wallace, John Kevin Spiller, R. Stephen Ferrell, Houston, Mark Aronowitz, Kemah, for appellees.

Panel consists of Chief Justice HEDGES, Justices FROST and GUZMAN.

## OPINION

EVA M. GUZMAN, Justice.

We withdraw our opinion of September 21, 2004, and issue this substituted opinion. In this dram-shop case, we examine several evidentiary issues, including whether (1)

appellants produced more than a scintilla of evidence in response to appellees' no-evidence summary judgment motion; (2) appellees' summary judgment evidence established its entitlement to judgment as a matter of law; and (3) the trial court erred in granting appellees' motion to strike the testimony of appellants' expert witness. We conclude the trial court properly granted summary judgment and did not err in striking the expert's testimony. Thus, we affirm the trial court's judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

Tragically, in the early morning hours of May 17, 1998, as Mario Alaniz and his wife, Ludivina, crossed Seawall Boulevard, they were struck and killed by a vehicle driven by Ronald Kurtz.[1] The record shows Kurtz began drinking at J.W.'s 8 Mile Road Bait Camp ("J.W.'s") during the afternoon hours of May 16. While at J.W.'s, Kurtz drank between four and six beers. At about 9:30 that evening, Kurtz and several of his friends left J.W.'s and went to the Oasis, a bar owned by appellee Rebello Food and Beverage Services, L.L.C., d/b/a The Oasis ("Oasis"). While at the Oasis, Kurtz had two mixed drinks. He left the Oasis at approximately 11:45 p.m.[2] Kurtz testified that as he turned onto Seawall Boulevard, he blacked out and he has no recollection of what happened thereafter, including the accident, which occurred at approximately 12:40 a.m. on May 17.

Appellants, children of Mr. and Mrs. Alaniz, the childrens' aunt, and grandmother, filed suit against Kurtz[3] and appellees, Oasis, SRK Management, Inc., d/b/a Howard Johnson Suites ("SRK"), and Kirit Patel,[4] alleging various causes of action, including suit under the Dram Shop Act.[5] Appellants claimed appellees served alcoholic drinks to Kurtz when it was apparent he was obviously intoxicated.

Appellees filed a traditional and no-evidence motion for summary judgment arguing (1) their evidence established it was not apparent to anyone at the Oasis that Kurtz was obviously intoxicated; and (2) there was no evidence Kurtz was obviously intoxicated and no evidence of proximate causation. Appellees also filed a motion to exclude the testimony of appellants' expert witness, James C. Garriott. Appellants filed a partial motion for summary judgment, claiming that appellees' attempt to join Kurtz as a responsible third party, and thereby apportion liability, was in contravention of the Dram Shop Act. After a hearing on the motions, the trial court granted appellees' motion and denied appellants' motion. This appeal ensued.

### ISSUES PRESENTED

In seven issues, appellants challenge the trial court's grant of summary judgment in favor of appellees on the following grounds: (1) appellees' no-evidence summary judgment motion failed to meet the

1. The record reflects Kurtz was tried and convicted in a criminal proceeding in connection with the deaths of Mario and Ludivina Alaniz.

2. The summary judgment evidence indicates Kurtz left the Oasis between 10:30 p.m. and 11:45 p.m.

3. Appellants later non-suited their claims against Kurtz.

4. Appellants also filed suit against Howard Johnson International, Inc. The trial court granted summary judgment in favor of Howard Johnson International and appellants do not challenge that judgment on appeal.

5. See TEX. ALCO. BEV.CODE ANN. §§ 2.01–.03 (Vernon 1995) (hereinafter "Dram Shop Act").

specificity requirements of Rule 166a(i);[6] (2) appellants raised more than a scintilla of evidence as to the elements of their Dram Shop Act cause of action; (3) material issues of fact existed regarding the apparent intoxication of Ronald Kurtz and proximate causation; (4) appellees' summary judgment evidence was insufficient; (5) the testimony of appellants' expert witness should not have been stricken; (6) appellants' summary judgment motion on the issue of the intoxicated driver's comparative responsibility should have been granted; and (7) the trial court erred in requiring appellants to produce a blood alcohol level as evidence of obvious intoxication. We address appellants' issues in the order in which they are raised.

## DISCUSSION

### A. Did appellants' no-evidence summary judgment motion meet the requirements of Rule 166a(i)?

■ In their first issue, appellants argue that appellees' no-evidence summary judgment motion failed to meet the specificity requirements of Rule 166a(i).[7] *See* TEX.R. CIV. P. 166a(i). Appellants contend appellees' motion merely recites the Dram Shop Act and makes a general statement as to a lack of evidence. Appellants argue that because of the lack of specificity, they did not have sufficient notice as to which elements appellees were challenging. After examining the Dram Shop Act and appellees' no-evidence motion, we conclude the motion was sufficiently specific under Rule 166a(i).

Rule 166a(i) provides in part that a no-evidence summary judgment motion must "state the elements as to which there is no evidence." *Id.* Essentially, this require-

ment prohibits conclusory no-evidence motions or general no-evidence challenges to an opponent's case. *See* TEX.R. CIV. P. 166a(i) cmt.; *Cuyler v. Minns,* 60 S.W.3d 209, 212 (Tex.App.-Houston [14th Dist.] 2001, pet. denied).

Under the Dram Shop Act, a plaintiff must prove that at the time alcohol was provided, sold, or served, it was apparent to the provider that the person consuming the alcohol was obviously intoxicated to the extent that he presented a danger to himself and others. *See* TEX. ALCO. BEV.CODE ANN. § 2.02(b)(1) (Vernon 1995); *Borneman v. Steak & Ale of Tex., Inc.,* 22 S.W.3d 411, 412 (Tex.2000). The plaintiff must also prove that the intoxication of the person consuming the alcohol was a proximate cause of the damages suffered. TEX. ALCO. BEV.CODE ANN. § 2.02(b)(2) (Vernon 1995); *Borneman,* 22 S.W.3d at 412.

In their summary judgment motion, appellees first provide a factual recitation of the case and conclude that section with a summation of their no-evidence and traditional summary judgment grounds. After setting forth their arguments on the traditional summary judgment motion, appellees then state their no-evidence motion arguments, in part, as follows:

> a. One element of a dram-shop case is that at the time the provision of alcohol occurred, it was apparent to the provider that the person being provided with an alcoholic beverage was obviously intoxicated to the extent that he presented a clear danger to himself and others. Here, there is no evidence that while Kurtz was at the Oasis, it was apparent to the employees ... that Kurtz was obviously intoxicated to the extent that

---

6. TEX.R. CIV. P. 166a(i).

7. This court previously has held that the sufficiency of a motion under Rule 166a(i) may be challenged for the first time on appeal. *Cuyler v. Minns,* 60 S.W.3d 209, 213 (Tex.App.-Houston [14th Dist.] 2001, pet. denied).

he presented a clear danger to himself and others.

b. The Dram Shop Act also requires that the intoxication of the recipient of the alcoholic beverages have been a proximate cause of the damages suffered. Here, there is no evidence that the intoxication of Kurtz was a proximate cause of the damages suffered.

The foregoing statements specifically set forth the two elements appellants are required to prove under the Dram Shop Act and, correspondingly, identify the specific elements on which appellees contend appellants have no evidence. *See* TEX. ALCO. BEV.CODE ANN. § 2.02(b); *Borneman,* 22 S.W.3d at 412 (setting out elements a plaintiff must prove under Dram Shop Act). Thus, appellees have satisfied the requirements of Rule 166a(i). *See, e.g., Johnson v. Felts,* 140 S.W.3d 702, 706–07 (Tex.App.-Houston [14th Dist.] 2004, pet. denied) (citing *Johnson v. Brewer & Pritchard,* 73 S.W.3d 193, 207 (Tex.2002)); *Lampasas v. Spring Center, Inc.,* 988 S.W.2d 428, 436 (Tex.App.-Houston [14th Dist.] 1999, no pet.). Further, the motion sufficiently put appellants on notice of the elements being challenged by appellees. Accordingly, we overrule appellants' first issue.

## B. Did material issues of fact preclude the trial court's grant of summary judgment?

■ In their second and third issues, appellants argue, respectively, that the trial court erred in granting appellees' no-evidence summary judgment motion regarding Kurtz's intoxication, and in granting appellees' traditional summary judgment motion on the issue of intoxication because material fact issues exist as to Kurtz's "apparent intoxication" and causation. Although appellants argue these issues jointly in their appellate brief, we address each separately. Because the tri-

al court's judgment does not specify the grounds for its ruling, we may affirm judgment on any meritorious ground raised in the motion. *Pa. Pulp & Paper Co. v. Nationwide Mut. Ins. Co.,* 100 S.W.3d 566, 570 (Tex.App.-Houston [14th Dist.] 2003, pet. denied).

### 1. No–Evidence Summary Judgment

#### a. Standard of review

A party may move for summary judgment on the basis that there is no evidence of an essential element of the non-movant's cause of action. TEX.R. CIV. P. 166a(i). To defeat a no-evidence summary judgment motion, a party must produce more than a scintilla of probative evidence raising a genuine issue of material fact on the challenged elements. *See* TEX.R. CIV. P. 166a(i) cmt.; *Lampasas,* 988 S.W.2d at 432. We will sustain the trial court's judgment if (1) there is a complete absence of proof of a vital fact; (2) rules of law or evidence bar the court from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidence conclusively establishes the opposite of a vital fact. *Coastal Conduit & Ditching, Inc. v. Noram Energy Corp.,* 29 S.W.3d 282, 284 (Tex.App.-Houston [14th Dist.] 2000, no pet.). We view the evidence in the light most favorable to the non-movant, disregarding all contrary evidence and inferences. *Randall's Food Mkts., Inc. v. Johnson,* 891 S.W.2d 640, 644 (Tex.1995); *Flameout Design & Fabrication, Inc. v. Pennzoil Caspian Corp.,* 994 S.W.2d 830, 834 (Tex.App.-Houston [1st Dist.] 1999, no pet.). "Unlike a movant for traditional summary judgment, a movant for a no-evidence summary judgment does not bear the burden of establishing a right to judgment by proving each claim or defense." *Lake Charles Harbor & Terminal Dist. v. Bd. of Trs. of*

*Galveston Wharves,* 62 S.W.3d 237, 241 (Tex.App.-Houston [14th Dist.] 2001, pet. denied).

More than a scintilla of evidence exists if the evidence rises to a level that would allow reasonable and fair-minded people to differ in their conclusions. *Ford Motor Co. v. Ridgway,* 135 S.W.3d 598, 601 (Tex. 2004). However, when the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and is, in effect, no evidence. *Id.* Circumstantial evidence may be used to establish a material fact, but to raise a genuine issue of material fact, the evidence must transcend mere suspicion. *Id.* "Evidence that is so slight as to make any inference a guess is in legal effect no evidence." *Id.*

### b. Discussion

■ As previously stated, on appellants' Dram Shop Act claims, they must prove two elements: (1) that at the time alcohol was provided, sold, or served, it was apparent to the appellees that Kurtz was obviously intoxicated to the extent he presented a danger to himself and others; and (2) Kurtz's intoxication was a proximate cause of the damages suffered. *See* TEX. ALCO. BEV.CODE ANN. § 2.02(b);[8] *Borneman,* 22 S.W.3d at 412. In the trial court, appellees argued there was no evidence that at the time Kurtz was served, it was apparent to the employees of the Oasis that he was obviously intoxicated to the extent that he presented a clear danger to himself and others and there was no evidence of proximate causation.

In response to appellees' motion, appellants produced no direct evidence that while being served at the Oasis, Kurtz was obviously intoxicated. Instead, appellants pointed to circumstantial evidence which they claim raises a fact issue regarding Kurtz's obvious intoxication. Primarily, appellants rely on a 40-second video tape made of Kurtz at a convenience store where he stopped just after the accident, at approximately 12:38 a.m.[9] in the morning hours of May 17. Appellants also rely on the testimony of Michael Reilly, a customer at the convenience store when Kurtz entered, who testified that Kurtz appeared obviously intoxicated while at the convenience store. He stated that when Kurtz entered the store he was staggering and when Kurtz spoke, he was loud. Reilly also testified that it appeared Kurtz may have urinated on himself. However, given that Kurtz was at the convenience store approximately fifty to fifty-five minutes after leaving the Oasis, the video tape, and similarly Reilly's testimony, establish only that when Kurtz was at the convenience store, he appeared obviously intoxicated. *See J.D. Abrams, Inc. v. McIver,* 966 S.W.2d 87, 91–92 (Tex.App.-Houston [1st Dist.] 1998, pet. denied). Under the facts of this case, this evidence does not establish that Kurtz was obviously intoxicated while being served at the Oasis, and any inferences regarding his obvious intoxication while there would amount to no more than mere speculation. Thus, this

---

8. Prior to the enactment of section 2.02 of the Alcoholic Beverage Code, an alcohol provider's duty to discontinue serving alcohol arose "once, through the observation of a patron's demeanor, conduct or appearance, [the provider] knows or should know the patron is intoxicated." *El Chico Corp. v. Poole,* 732 S.W.2d 306, 313 (Tex.1987). However, with the enactment of section 2.02, the Legislature created a more onerous burden of proof for a plaintiff. *Id.* at 315.

9. The police report indicates the accident happened at 12:40 a.m. on May 17, but appellees do not dispute that the accident happened prior to the video recording.

evidence is in effect, no evidence, and fails to raise a sufficient fact issue.

Appellants also point to evidence that Kurtz blacked out only "seconds" after leaving the Oasis. Relying on *El Chico Corp. v. Poole*, 732 S.W.2d 306 (Tex.1987), appellants argue that circumstantial evidence that a driver has "blacked-out due to consumption of alcohol" sufficiently raises a fact issue and that they have brought forward the same evidence as in *El Chico;* however, for the reasons discussed below, we conclude *El Chico* is distinguishable.[10]

■■■■ First, in *El Chico*, there was no question the intoxicated driver had left the provider's establishment only moments before the accident occurred. The evidence in that case established this fact. *Id.* at

308, 314. Here, viewing the evidence in appellants' favor, the record indicates that Kurtz left the Oasis at approximately 11:45 p.m.; however, the accident occurred some fifty to fifty-five minutes after that time, regardless of when he may have blacked out.[11] Appellants argue that because the accident occurred within two miles of the Oasis, we must infer that Kurtz left the bar at a time much closer to the accident. However, the record evidence reflects that Kurtz left the Oasis some time between 10:30 p.m. and 11:45 p.m.; therefore, any such inference would be merely speculation and conjecture.[12] As noted, although evidence of Kurtz's obvious intoxication and the requisite proximate causation may be established by circumstantial evidence,[13] the evidence must transcend mere

10. Appellants make a similar argument in reference to the *El Chico* court's noting that the intoxicated driver was an alcoholic. However, the *El Chico* court based its holding on the fact that the driver showed signs of intoxication at the accident scene, which occurred within minutes of leaving the alcohol provider's premises. *El Chico*, 732 S.W.2d at 315. In this case, we do not have the temporal connection present in *El Chico* such that we can reasonably infer that, because Kurtz was an alcoholic and blacked out, his involvement in an accident approximately fifty minutes later establishes he exhibited signs of obvious intoxication while at the Oasis.

11. The *El Chico* court based its holding—that the driver's "apparent intoxication" at the scene of the accident raised a fact issue as to whether the employees knew or should have known of his intoxication—on the temporal proximity of the accident to the driver's leaving the defendant's establishment. 732 S.W.2d at 315. The court mentioned that the intoxicated driver also had blacked-out. *Id.* at 308.

12. Appellants argue there is a fact issue as to when Kurtz left the Oasis, relying on an unsworn, unsigned transcript of a telephone conversation with Brenda Ragan, a friend of Kurtz who was also at the Oasis that evening, in which she stated that when she left the Oasis at 11:45 p.m., Kurtz was still sitting at

the bar. However, the unsworn, unsigned transcript is not competent summary judgment evidence and, therefore, we do not consider it in our analysis. *See Perkins v. Crittenden*, 462 S.W.2d 565, 568 (Tex.1970) (holding that unsworn statement was not an affidavit and could not support summary judgment); *Geiselman v. Cramer Fin. Group, Inc.*, 965 S.W.2d 532, 537 (Tex.App.-Houston [14th Dist.] 1997, no pet.) (finding the trial court should not have considered an incompetent affidavit in ruling on a motion for summary judgment); *Elam v. Yale Clinic*, 783 S.W.2d 638, 643 (Tex.App.-Houston [14th Dist.] 1989, no writ) (stating absence of jurat is substantive defect in affidavit and is not waived by failing to bring it to trial court's attention); *Conte v. Ditta*, No. 14–02–00482–CV, 2003 WL 21191296, at *3 (Tex.App.-Houston [14th Dist.] May 22, 2003, no pet.) (not designated for publication) (finding that, without notarization, a statement is not an affidavit and is not competent summary judgment proof and could not be considered on appeal, citing *Coastal Cement Sand, Inc. v. First Interstate Credit Alliance, Inc.*, 956 S.W.2d 562, 567 (Tex.App.-Houston [14th Dist.] 1997, writ denied)).

13. *Cianci v. M. Till, Inc.*, 34 S.W.3d 327, 331 (Tex.App.-Eastland 2000, no pet.); *Perseus, Inc. v. Canody*, 995 S.W.2d 202, 207 (Tex. App.-San Antonio 1999, no pet.).

suspicion and conjecture. *See Lozano v. Lozano,* 52 S.W.3d 141, 149 (Tex.2001); *Calp v. Tau Kappa Epsilon Fraternity,* 75 S.W.3d 641, 648 (Tex.App.-Amarillo 2002, pet. denied). A vital fact may not be established by "piling inference upon inference." *Entex v. Gonzalez,* 94 S.W.3d 1, 8 (Tex.App.-Houston [14th Dist.] 2002, pet. denied) (citing *Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.,* 435 S.W.2d 854, 858 (Tex.1968)). Facts from which an inference may properly be drawn must be established by direct evidence and not by other inferences. *Id.* Here, appellants would have this court draw inferences from Kurtz's conduct at the convenience store and then pile those inferences upon inferences, and this we cannot do.

■ Moreover, plaintiff's burden of proof in *El Chico* was, as acknowledged by the *El Chico* court, less onerous than is appellants' burden in this case. *See El Chico,* 732 S.W.2d at 315 (stating that with the enactment of Section 2.02 of the Alcoholic Beverage Code, the Legislature created a more onerous burden of proof for a plaintiff). In *El Chico,* the plaintiff was required to prove only that the beverage server "knew or should have known" that the individual was intoxicated. *See id.* at 314. In this case, appellants must prove that at the time alcohol was provided, sold, or served, it was apparent to the appellees that Kurtz was obviously intoxicated to the extent he presented a danger to himself and others. An inference the alcohol provider knew or should have known an individual was intoxicated is more reasonable when an accident occurs within a close temporal proximity to his leaving the provider's establishment. In this case, this temporal proximity has not been established.

The facts in this case are more appropriately analogized to those in *J.D. Abrams, Inc. v. McIver,* in which the First

Court of Appeals determined that although there was evidence of the driver's intoxication at the accident scene, because the accident occurred one hour after leaving the premises of the defendant's establishment, there was no evidence that the driver appeared "obviously intoxicated" to the alcohol provider, to the extent the driver presented a clear danger to himself and others. 966 S.W.2d 87, 91–92 (Tex. App.-Houston [1st Dist.] 1998, pet. denied). The First Court of Appeals distinguished *El Chico* primarily on this time differential. *Id.*

■ Likewise, here, although the video tape and Reilly's testimony may be evidence that Kurtz was intoxicated immediately following the accident, because the accident occurred some fifty to fifty-five minutes after Kurtz left the Oasis, we do not agree that it is evidence he was obviously intoxicated while being served at that establishment. Although we recognize that circumstantial evidence may be used to establish any material fact, to raise a genuine issue of material fact the evidence must transcend "mere suspicion." *Ford Motor Co.,* 135 S.W.3d at 601. The evidence relied on by appellants raises only suspicions and is, in effect, no evidence. Moreover, there is no evidence in the record pertaining to when Kurtz may have been served his last drink at the Oasis, nor any evidence regarding Kurtz's whereabouts during the fifty to fifty-five minute time interval between his departure from the bar and the deadly accident. Kurtz has no recollection of the events which occurred during that period of time and there is no other evidence in the record to account for it. Given this, we cannot infer from Kurtz's appearance on the video tape that he was "obviously intoxicated" while at the Oasis and that this intoxication was the proximate cause of the

accident.[14] *See, e.g., J.D. Abrams,* 966 S.W.2d at 92 (finding evidence of intoxication at scene of accident occurring fifty-five minutes after leaving the premises of a defendant alcohol provider was no evidence the driver was "obviously intoxicated" while at that defendant's establishment).

■ Appellants also claim that appellees' own expert witness, Dr. Wayne Snodgrass, testified that Kurtz was "impaired" upon arriving at the Oasis. However, examining Snodgrass's testimony in context, he specifically testified that Kurtz was "impaired for driving." He then explained that a person may be "impaired for driving" when his blood alcohol level is .05, though the legal limit for driving while intoxicated in Texas is .08. Further, Snodgrass explained that even though an individual may be impaired for driving at a blood alcohol level of .05, that individual may not show any observational effects of the alcohol. Considering Snodgrass's testimony, we cannot say that the statement raises a fact issue sufficient to defeat summary judgment.[15]

■ Appellants argue that Snodgrass also testified it was not probable that Kurtz's intoxicated state, as displayed in the video, arose after leaving the Oasis. In eliciting this statement from Snodgrass, appellants' counsel asked how many drinks Kurtz would have had to consume between 11:45 p.m., the time Kurtz left the Oasis, and the time of the accident to appear as he did in the video, *assuming Kurtz had a blood alcohol level of zero* at 11:45 p.m. Snodgrass responded that Kurtz would have had to consume 9, 10, or 11 drinks in 53 minutes to get his blood alcohol level to .3, the point when Kurtz would be exhibiting observational effects of alcohol. Appellants' counsel followed up, asking Snodgrass, "[i]s that possible to do that, drink that many drinks in 55 minutes?" Snodgrass stated, "It's possible. Probably not likely." Thus, in posing the hypothetical, counsel specifically asked Snodgrass to assume Kurtz had a blood alcohol level of *zero* at 11:45 p.m., an assumption contrary to the evidence in the case. There is no dispute that Kurtz, in fact, had been drinking that evening and the record evidence indicates that Kurtz could not have had a zero blood alcohol level when he left the Oasis. When an expert's opinion is based on assumed facts that vary materially from actual, undisputed facts, the opinion has no probative value and is therefore, no evidence. *See Burroughs Wellcome Co. v. Crye,* 907 S.W.2d 497, 499–500 (Tex.1995). The issue here is whether Kurtz was "obviously intoxicated" while being served at the Oasis such that he presented a danger to himself or others. Snodgrass's response to the hypothetical posed is not more than a scintilla of probative evidence and fails to raise a genuine issue of materi-

14. Appellants also rely on the statement of appellee's expert witness, Dr. Wayne Snodgrass, that Kurtz was "probably" inebriated *while at the convenience store,* based on his appearance in the video tape. However, for the same reasons discussed above, the video tape is no evidence of whether Kurtz was obviously intoxicated while at the Oasis and we do not consider Snodgrass's conclusion as probative evidence raising a fact issue regarding whether Kurtz was obviously intoxicated while at the Oasis.

15. Further, appellants point to the testimony of their expert witness as raising a fact issue; however, the trial court sustained the appellees' motion to exclude the testimony of appellants' expert witness, an issue raised by appellants on appeal and addressed later in this opinion. Because we find the evidence was properly excluded by the trial court, we do not consider it in our analysis of the summary judgment. *See Praytor v. Ford Motor Co.,* 97 S.W.3d 237, 246 (Tex.App.-Houston [14th Dist.] 2002, no pet.).

al fact.[16]

In sum, we conclude appellants failed to present more than a scintilla of evidence that at the time alcohol was provided, sold, or served to Kurtz while he was at the Oasis, it was apparent to appellees that he was obviously intoxicated to the extent he presented a danger to himself and others. Therefore, the trial court did not err in granting appellees' no-evidence summary judgment motion. Having determined this, it is not necessary to examine whether the trial court also properly granted appellees' traditional summary judgment motion. *See Ford Motor Co.*, 135 S.W.3d at 600. However, we conclude that appellees also established their entitlement to a traditional summary judgment.

### 2. Traditional Summary Judgment

#### a. Standard of Review

A traditional summary judgment is proper only when the movant establishes there is no genuine issue of material fact and it is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985); *Corporate Leasing Int'l, Inc. v. Groves*, 925 S.W.2d 734, 736 (Tex.App.-Fort Worth 1996, writ denied). A trial court properly grants summary judgment in favor of a defendant if that party conclusively establishes all elements of an affirmative defense, or conclusively negates at least one element of the plaintiff's claim. *Am. Tobacco Co., Inc. v. Grinnell*, 951 S.W.2d 420, 425 (Tex.1997). We must take as true all evidence favorable to the non-movant and make all reasonable inferences in the non-movant's fa-

vor. *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex.1999).

Once a defendant produces sufficient evidence establishing its right to summary judgment, the burden shifts to the plaintiff to come forward with competent, controverting evidence raising a genuine issue of material fact with regard to the element challenged by the defendant. *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex.1996); *Borth v. Charley's Concrete Co.*, 139 S.W.3d 391, 394 (Tex.App.-Fort Worth 2004, pet. denied) (citing *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995)).

#### b. Discussion

■ Appellees' summary judgment evidence included the affidavit and deposition testimony of Melody Albonetti, the individual serving drinks to Kurtz and several others accompanying him while he was at the Oasis. Albonetti stated that Kurtz did not appear intoxicated at the time she served the drinks to him. She also stated that Kurtz was not slurring his words, having trouble communicating, acting loud, boisterous or aggressive, and that he was not overly friendly to other guests or exhibiting other inappropriate behaviors. She further testified that Kurtz was not buying drinks for strangers or acting careless with his money, he was not using foul language or making irrational statements, and he was not stumbling or bumping into things. In sum, Albonetti stated that when she served the drinks to Kurtz, he did not appear obviously intoxicated to the

---

**16.** Also, in response to appellees' summary judgment motion, appellants furnished a portion of J.W. Carra's testimony in which he stated he was not "keeping an eye on [Kurtz] or watching him, per se." Appellants argue this is evidence that Carra was not observing Kurtz for signs of intoxication and thus, raises

a fact issue. Carra's testimony, as relied on by appellees, is limited to his observations of Kurtz while at the Oasis. Stating he was not "keeping an eye" on Kurtz does not raise a fact issue as to whether Kurtz appeared obviously intoxicated while at the Oasis when observed by Carra.

extent he presented a clear danger to himself or others.

Brenda Ragan, also at the Oasis that evening, stated in her affidavit that she had successfully completed a Texas Alcoholic Beverage Commission-approved Alcohol Sellers/Servers Program, that she was with Kurtz at the Oasis and had observed him and interacted with him and he did not appear to be intoxicated. She stated further that Kurtz, "appeared to be sober and in full control of his mental faculties and bodily movements." Like Albonetti, Ragan also testified that Kurtz was not exhibiting a list of behaviors traditionally construed as evidence of intoxication.[17] Further, Ragan stated that based upon her training and experience, at no time did Kurtz appear obviously intoxicated to an extent that he presented a danger to himself or others.[18]

In his deposition, James W. Carra, the owner of J.W.'s and a friend of Kurtz, stated that based upon his observations of Kurtz while at the Oasis, Kurtz did not appear obviously intoxicated to the extent he presented a danger to himself or others. Bobbi Carra, James's wife, testified similarly. Although she acknowledged she was not really paying any attention to Kurtz, she testified that based on her observations of him, he was not obviously intoxicated while at the Oasis. Appellees also provided a transcript of the testimony of Theresa Yancey from the criminal proceeding against Kurtz. Yancey accompanied Kurtz and the others to the Oasis on May 16. She testified that Kurtz did not appear drunk when he left the bar. Yancey stated "[Kurtz] seemed all right, . . . . He didn't seem drunk. He had no slurred words or physical impairment, unable to— weave or anything."

Kurtz's deposition testimony was also attached to appellees' summary judgment motion. Kurtz testified that he suffered from post-traumatic stress disorder ("PTSD") due to his combat service in Vietnam where he served as a Marine. He also stated that at the time of the accident, he was taking three medications for the PTSD, including Trazadone, Zoloft, and Lithium Carbonate. He stated he was not intoxicated on the night of the accident. Kurtz testified that after getting into his truck in the Oasis parking lot, he took one-half of a Trazodone tablet, approximately 100 milligrams. Shortly thereafter, he blacked out.

Finally, appellees also produced a report from their expert, Snodgrass, which concluded that "[t]he description of Ronald Kurtz as not being visibly intoxicated at the [Oasis] is consistent with known medical and scientific information regarding tolerance to alcohol."

In light of this evidence, establishing that Kurtz did not appear obviously intoxicated while at the Oasis, it was incumbent upon appellants to present evidence raising a genuine issue of material fact with regard to this element. However, as discussed in the preceding section, appellants' evidence failed to raise a fact issue.

---

17. Ragan's affidavit stated:
Based upon my personal observation of Ronald Kurtz, he did not appear confused, nor did he appear to be suffering from impaired perception, impaired memory or comprehension, increased reaction time, sensory motor incoordination [sic], disorientation, impaired imbalance, drowsiness, general muscular incoordination [sic], or slurred speech. . . . Ronald Kurtz did not have glassy eyes, clumsiness in motion, staggering, an unsteady gait while walking, nor was Ronald Kurtz making inappropriate responses to the conversation of those around him or to those whom [sic] he was speaking.

18. Appellants did not provide evidence controverting Ragan's statement.

In sum, we affirm the trial court's granting appellees' summary judgment motion and overrule appellants' second and third issues.[19]

## C. Did the trial court err in granting appellees' motion to strike appellants' expert?

In their fifth issue, appellants argue the trial court erred in granting appellees' motion to strike their expert witness, Dr. James Garriott. In their motion, appellees assert that Garriott's testimony is unreliable because Garriott relied on inaccurate assumptions about Kurtz's alcohol consumption, his opinions were speculative, and he admitted that without an actual blood alcohol level for Kurtz, he could not estimate an accurate blood alcohol level while Kurtz was at the Oasis. We agree.

We review the trial court's decision to exclude an expert's affidavit under an abuse of discretion standard. *Blan v. Ali,* 7 S.W.3d 741, 744 (Tex.App.-Houston [14th Dist.] 1999, no pet.) (citing *Gammill v. Jack Williams Chevrolet, Inc.,* 972 S.W.2d 713, 718 (Tex.1998)). The trial court abuses its discretion when its ruling is arbitrary, unreasonable, or made without reference to any guiding rules or legal principles. *See id.*

An expert opinion that is not based on a reliable foundation is inadmissible. TEX.R. EVID. 705(c); *Weiss v. Mech. Associated Servs., Inc.,* 989 S.W.2d 120, 124 (Tex.App.-San Antonio 1999, pet. denied). The burden is on the proponent of the evidence to demonstrate scientific reliability. *Weiss,* 989 S.W.2d at 124. Also, "[e]xpert opinions must be supported by facts in evidence, not conjecture." *Marathon Corp. v. Pitzner,* 106 S.W.3d 724, 729 (Tex.2003); *see also United Blood Servs. v. Longoria,* 938 S.W.2d 29, 30 (Tex.1997) (per curiam) (noting that supporting and opposing affidavits, under Rule 166a(f), must set forth facts as would be admissible in evidence).

In his report, Garriott opined as to Kurtz's blood alcohol level at 11:30 p.m. on May 16, stating it would be .090 to .115, based on the assumption that Kurtz consumed four to six beers from 6:00 p.m. to 9:00 p.m., and two regular mixed drinks while at the Oasis. Garriott also opined regarding Kurtz's blood alcohol level if the mixed drinks were "doubles," and thus raising the estimated blood alcohol levels. In his deposition, however, Garriott admitted there was no evidence the drinks were doubles. Garriott also acknowledged that given a longer duration of consumption, blood alcohol levels would be lower. Although the evidence established Kurtz may have begun drinking as early as 1:00 p.m.

19. In their fourth issue, appellants also challenge the affidavits furnished by appellees, arguing the witnesses were not observing Kurtz while he was at the Oasis, Albonetti's testimony was contradictory, and the witnesses were all "interested witnesses" and were themselves intoxicated while at the Oasis. However, because affidavits of interested witnesses present a defect of form rather than a defect of substance, preservation for our review requires an objection in the trial court. *See* TEX.R. CIV. P. 166a(f); *Ahumada v. Dow Chem. Co.,* 992 S.W.2d 555, 562 (Tex.App.-Houston [14th Dist.] 1999, pet. denied). Further, even when a proper objection is lodged, affidavits remain part of the summary judgment record unless there is a written, signed order sustaining the objection. *Id.* (citing *Peerenboom v. HSP Foods, Inc.,* 910 S.W.2d 156, 160 (Tex.App.-Waco 1995, no writ)); *Cain v. Rust Indus. Cleaning Servs., Inc.,* 969 S.W.2d 464, 466 (Tex.App.-Texarkana 1998, pet. denied). In this case, although appellants generally stated in their response to appellees summary judgment motion that "[a]ll of [appellees'] evidence consists of interested witnesses," there is no specific objection to the evidence and no ruling by the trial court. Thus, appellants have failed to preserve this argument for our review.

on the afternoon of May 16, or as late as 4:30 that afternoon, Garriott's opinions were based on the assumption that Kurtz began drinking at 6:00 p.m. despite the lack of record evidence that Kurtz began drinking at that later time. When an expert's opinion is based on assumed facts that vary materially from the actual facts, the opinion has no probative value and is no evidence. *See Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499–500 (Tex. 1995). Also, Garriott admitted he did not take into account whether Kurtz had eaten, though the evidence indicated he had. Garriott acknowledged further that food intake slows down the absorption of alcohol, affecting observational effects of drinking.

Importantly, during his deposition Garriott described the case as a "little bit unusual" because generally, when he testified as an expert on intoxication, he would have a blood alcohol level to extrapolate from in estimating a person's level of intoxication. Garriott admitted that he relied "very heavily" on a known blood alcohol level in giving his opinions and making interpretations; however, he acknowledged there was no known blood alcohol level to work with in this case. Indeed, he admitted that because he did not have a blood alcohol level from which he could work, his opinion in this case was less reliable.

Garriott also stated that he could not testify to a reasonable medical probability or reasonable toxicological probability what Kurtz's physical appearance may have been while he was at the Oasis and agreed that those witnesses physically present at the Oasis while Kurtz was there were in the "best position to provide testimony and information regarding [Kurtz's] physical characteristics and appearance during that time."

Because Garriott had no actual blood alcohol level from which to extrapolate, his methodology was admittedly less reliable. In addition, Garriott based his calculations on facts not in evidence and on assumptions that were contrary to facts. Examining Garriott's report and testimony in light of the above, we cannot say the trial court abused its discretion in excluding Garriott's testimony.[20] We overrule appellants' fifth issue.

**D.  Did the trial court err in denying appellants' partial summary judgment motion?**

In their sixth issue, appellants argue the trial court erred in denying their summary judgment motion regarding apportioning liability to Kurtz. However, appellants' motion for partial summary judgment did not seek a final judgment and therefore, we lack appellate jurisdiction to review the trial court's denial of that motion.[21] *Chair King, Inc. v. GTE Mobilnet of Houston, Inc.*, 135 S.W.3d 365, 396 (Tex. App.-Houston [14th Dist.] 2004, no pet.) (citing *CU Lloyd's of Texas v. Feldman*, 977 S.W.2d 568, 569 (Tex.1998)). Because we may not address an issue not properly before this court, we do not consider appellants' sixth issue.

For the foregoing reasons, the judgment of the trial court is affirmed.

---

20. In light of this holding, we do not address appellants' seventh issue, that the trial court erred in "requiring that Appellants produce a blood alcohol level as evidence of obvious intoxication."

21. Moreover, appellants' issue is rendered moot by the trial court's summary judgment.