MAASSEN, Justice,
with whom WINFREE, Justice, joins, dissenting.
I would affirm the superior court's grant of summary judgment. Our threshold for defeating summary judgment is indeed low, as today's opinion points out,[1] but it is still a threshold that can be crossed only with evidence. The Kalenka Estate's liability claim requires the jury not only to consider the evidence and draw reasonable inferences from it, but also to speculate that certain interactions occurred and then draw inferences from those imagined events. This travels too far into the realm of speculation.
Dram shop liability under Alaska law depends on proof of intoxication that is or should be apparent to the server. A licensee is immune from civil liability for injuries resulting from intoxication unless "the alcoholic beverages are provided to a drunken person in violation of AS 04.16.0830." [2] Alaska Statute 04.16.0380 is violated only if, as relevant here, the licensee "sellfs]}, give[s], or barter[s] alcoholic beverages to a drunken person" and does so "with criminal negli-genee." [3] "Criminal negligence" with respect to a particular cireumstance means that "the person fails to perceive a substantial and unjustifiable risk that ... the cireumstance exists; the risk must be of such a nature and degree that the failure to perceive it consti *353 tutes a gross deviation from the standard of care that a reasonable person would observe in the situation."[4] The legislature has expounded on the standard of care in these cases: it requires that servers "use their powers of observation to see that which can easily be seen, and hear that which can easily be heard, under the existing conditions and circwmstances and to determine whether the person is so far under the influence of intoxicating beverages that his conduct and demeanor are drunken."[5] A "drunken person" is one "whose physical or mental conduct is substantially impaired as a result of the introduction of an alcoholic beverage into the person's body and who exhibits those plain and easily observed or discovered outward manifestations of behavior commonly known to be produced by the over-consumption of aleoholic beverages." [6]
In short, Hability under the dram shop act requires not just that the licensee serve an intoxicated person; there must also be evidence that the licensee, in a gross deviation from a reasonable standard of care, failed to perceive "outward manifestations" of intoxication that were being "exhibit{ed]" and were "plain and easily observed or discovered." I have no quarrel in this case with the Estate's reliance on circumstantial evidence to show that Jack Morrell was intoxicated when he was served at Chilkoot Charlie's. What the Estate lacked, however, was any evidence of the equally critical part of its claim: that at the time Chilkoot Charlie's served Morrell, Morrell "exhibit{ed]" the "outward manifestations" of intoxication such that they were or should have been "plain and easily observed or discovered" by the person serving him. The Estate can only ask the jury to imagine the encounters in which this observation or discovery could have occurred, and the court's decision today unfortunately invites that speculation.
The opinion identifies six pieces of evidence that it concludes "support the reasonable inference that Morrell was visibly impaired through intoxication when he was served at Chilkoot Charlie's": (1) that he drank steadily at the bar for two to four hours; (2) that he had consumed no aleohol before arriving at the bar; (8) that he consumed as many as 18 or 19 drinks while at the bar; (4) that he did not consume any more aleohol after leaving the bar; (5) that he displayed "visible and obvious signs of intoxication" about 45 minutes after leaving the bar; and (6) that at the time of the altercation he had a blood alcohol content of about 0.27.[7] This boils down to proof of only two relevant points: that Morrell was highly intoxicated at the bar (items (1)-(4) and (6)), and that he exhibited the outward manifestations of his intoxication about 45 minutes later during a fight and a highly charged encounter with police (item (5)). Even taken together, this evidence cannot prove Chilkoot Charlie's liability under the dram shop act, because that liability depends on proof not just that Morrell was intoxicated at the bar but that he exhibited the outward manifestations of intoxication while he was being served there.
What were the "visible and obvious signs of intoxication" that the court seeks to pull back in time 45 minutes from when they were actually observed, in order to posit that Chilkoot Charlie's servers may have grossly deviated from a reasonable standard of care in failing to notice them? According to the court, these signs include "that Morrell was emotional and uncooperative toward police commands and instructions and that he was stumbling and slurring his speech."[8] But these symptoms of intoxication were entirely reactive and specific to the unfortunate context of Morrell's altercation with Eric Kalen-ka and its aftermath. There is no evidence that any such prompt occurred while Morrell was at Chilkoot Charlie's; there is no evidence that he had occasion to be "emotional and uncooperative" toward anybody. Indeed, as the court also notes, the only eyewit *354 ness testimony about Morrell's usual appearance at Chilkoot Charlie's was that he was "polite, soft spoken and mellow. [9]
Nor is there any evidence that Morrell had occasion at Chilkoot Charlie's to display the other "visible and obvious signs of intoxication" on which the court relies: "stumbling and slurring his speech." First, there is no evidence that Morrell got out of his chair even once while at the bar so as to display "stumbling." It can certainly be inferred, without direct evidence, that he walked into the bar-before he had had anything to drink-and that he walked out again-when any symptoms he displayed could no longer deter Chilkoot Charlie's from serving him. But any rambles around the bar in between times are purely speculative.[10] Nor is there any evidence that Morrell ever spoke in the presence of a server, so as to exhibit the "slurring of speech" on which the court also relies.[11] I do not believe that the jury can reasonably "infer" that such a conversation occurred, "infer" that it occurred after Mor-rell had become visibly intoxicated, and "infer" that in this hypothetical conversation Morrell slurred his speech in such a way that any server who failed to notice it was grossly deviating from a reasonable-person standard of care. Any such chain of conclusions is pure speculation, not reasonable inferences from the evidence.
While I certainly agree that the ciream-stantial evidence on which the court relies is relevant to the question of whether Morrell was visibly intoxicated while at the bar, it is not enough on which to base a finding of liability. In Kavorkian v. Tommy's Elbow Room, Inc., as the court recites, we noted that "[tlestimony concerning [the patron's] condition shortly before and after his visit to [the bar] is cireumstantially relevant to the determination of [his] condition at [the bar]." "[12] But we also mentioned testimony that the patron had "experienced difficulty walking to the football table once inside [the bar]." [13] An off-duty waitress who witnessed the patron's condition at the bar testified that he was "obviously drunk," though a bartender and a customer testified that he was not.[14] There was thus direct evidence in Kavorkian that has no counterpart here. It bears noting that such evidence may well have been available. The superior court, in its oral remarks during the summary judgment hearing, noted that "there's zero testimony in the case about where Morrell went [in the bar}, where he sat, how he got served, who served him, what he did, how he behaved in the bar," even though the court had granted a continuance of trial "in part to give [the Estate] an opportunity to depose Mr. Morrell," an opportunity the Estate inexplicably passed up.[15] Morrell was participating in the case and apparently available to be deposed. Even absent other, more disinterested eyewitness testimony, reasonable inferences about whether Morrell exhibited the outward manifestations of intoxication could have been developed from his deposition tes *355 timony about his interactions and movements in the bar. I am not proposing any sort of insurmountable evidentiary hurdle when I call the Estate's case speculative as it stands.
The court today relies on cases from other jurisdictions that similarly allow juries to speculate, on the basis of blood-aleohol evidence and observations made later, about whether the driver's intoxication was manifest at the bar. But cases run the gamut when it comes to determining the critical point at which such evidence is deemed sufficient. In Reed v. Breton, for example, the Michigan Supreme Court rejected the plaintiffs' argument that the driver's blood alcohol level, the amount of time he spent drinking, and other cireumstantial evidence could raise an issue of fact as to whether he was visibly impaired while drinking at the defendant establishment, in the face of eyewitness testimony that he was not.[16] In Alaniz v. Rebello Food & Beverage, L.L.C., a Texas appellate court held that a videotape and eyewitness testimony demonstrating the driver's obvious intoxication at a convenience store 50 to 55 minutes after he left the bar "does not establish that [the driver] was obviously intoxicated while being served at [the bar), and any inferences regarding his obvious intoxication while there would amount to no more than mere speculation." [17] In Owens v. Hooters Restaurant, the Alabama Supreme Court affirmed without opinion the grant of summary judgment to the defendant in a dram shop case in which the driver was in an accident just six-tenths of a mile away from the restaurant, where he was found to have a blood-alcohol content of .16 and "was slurring his speech and staggering." [18] Chief Justice Cobb, concurring in the per curiam affir-mance, explained why she found the plaintiffs evidence insufficient:
The evidence in this case strongly supports the conclusion that [the driver] was intoxicated at the seene of the accident; it might even be inferable that [the driver] was intoxicated when he left the Hooters restaurant. However, the record contains no evidence that would support an inference that any employee of Hooters served [the driver] alcohol while he was visibly intoxicated.[19]
And in Sorensen v. Denny Nash Inc., a New York court rejected, as insufficient to defeat summary judgment, an inference "that because [the driver] consumed a certain amount of alcohol throughout the evening and early morning hours and exhibited signs of intoxication at 8:15 A.M., he must have been intoxicated during a time period three hours before and, more importantly, appeared so."[20] I find these cases more persuasive than the ones cited in the opinion.
In short, I do not believe the Kalenka Estate in this case presented evidence on which a reasonable jury could decide the dram shop claim in its favor. In the absence of such evidence, a verdict for the Estate could only be based on inferences about Mor-rell's behavior during interactions that themselves were imagined, not inferred. I would affirm the superior court's grant of summary judgment to Chilkoot Charlie's.
MAASSEN, Justice, with whom WINFREE, Justice, joins, dissenting.

. Op. at 352.

. AS 04.21.020(a)(2).

. AS 04.16.030(a)(1).

. AS 04.21.080(a)(1).

. Williford v. L.J. Carr Invs., Inc., 783 P.2d 235, 239 n. 12 (Alaska 1989) (emphasis added) (quoting Senate Journal Supp. No. 23 at 15-16, 1980 Senate Journal 661).

. AS 04.21.080(b)(8) (emphasis added).

. Op. at 351.

. Op. at 351, n. 23.

. Op. at 347.

. A jury could perhaps infer that Morrell would have traveled to the men's room at least once during the hours he spent at Chilkoot Charlie's. But with that reasonable inference in hand a jury would have to pile on others: that Morrell went to the men's room after becoming visibly intoxicated and not just before; that he exhibited the outward manifestations of intoxication while en route; and that, in what was apparently "a capacity crowd" for Mardi Gras night, the servers' failure to observe Morrell's intoxicated state during his hypothetical trip to the men's room was a gross deviation from a reasonable-person standard of care.

. As the superior court correctly observed at the summary judgment hearing, "There's no evidence that [Morrell] was incapable of sitting at a table and quietly saying to a server([, 'AJnother beer please.['] That's all you have to say to a server to get that beer coming, and there's zero testimony that he was so intoxicated that he couldn't sit and say[, 'AJuother beer.'"

. Op. at 350-51 (quoting Kavorkian v. Tommy's Elbow Room, Inc., 694 P.2d 160, 165 n. 9 (Alaska 1985), rev'd on other grounds on reh'g, 711 P.2d 521 (Alaska 1985)).

. Kavorkian, 694 P.2d at 165.

. Id. & nn. 12-13.

. The court remarked, "I must say I'm floored that [the Estate's counsel] did not take [Morrell's] deposition, because the Court threw him a lifeline to do so and virtually told him that the Court doesn't think you can make a case without Mr. Morrell giving you some information that gets you into play here, and for whatever reason ... [the Estate's counsel] didn't want to go there."

. 475 Mich. 531, 718 NW.2d 770, 776-77 (2006). Reed involved a claim brought against the second-to-last bar to serve the intoxicated driver; such bars enjoy a rebuttable presumption against dram shop liability under Michigan law. Id. at 774. Although the court held that the presumption could only be defeated by "clear and convincing evidence," it also held that "the proofs presented [in the case before it] could not even meet the competent and credible standard for rebutting the presumption to show service to a visibly intoxicated person." Id. at 775-76.

. 165 S.W.3d 7, 13-14 (Tex.App.2005); see also J.D. Abrams, Inc. v. McIver, 966 S.W.2d 87, 91 (Tex.App.1998) (holding that evidence of driver's alcohol consumption and his obvious intoxication at the accident scene an hour after he left the bar were insufficient in the absence of "any testimony that [the driver] was 'obviously intoxicated' ... at the time he was provided alcohol at [the defendant bars} ... or that such condition was then 'apparent' to the provider").

. 41 So.3d 743, 743 (Ala.2009) (Cobb, C.J., concurring).

. Id. at 744 (Cobb, C.J., concurring).

. 249 AD.2d 745, 671 N.Y.S.2d 559, 561 (1998).