**Opinion issued November 5, 2013.**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-13-00351-CV

———————————

**BRANDON DAVIS AND CAROLYN DAVIS, INDIVIDUALLY AND AS NEXT FRIEND OF RYAN DAVIS, AN INCAPACITATED PERSON, APPELLANTS**

**V.**

**RPOINT5 VENTURES, LLC D/B/A/ FLOAT POOL AND PATIO BAR, APPELLEE**

---

### On Appeal from the 10th District Court
### Galveston County, Texas
### Trial Court Cause No. 12-CV-0862

---

### MEMORANDUM OPINION ON REHEARING

This court today heard a motion for rehearing filed by appellants, Brandon Davis and Carolyn Davis, individually and as next of friend of Ryan Davis, an incapacitated person. We order that the motion be denied, and that this court's

former judgment of October 10, 2013, be vacated and set aside. We further order this court's opinion of October 10, 2013, withdrawn, and issue this opinion in its stead.

In this case brought under the Dram Shop Act, Brandon and Carolyn Davis, individually and as the next friends of Ryan Davis, sued RPoint5 Ventures, LLC, for injuries that Ryan sustained as the driver, in a single-car accident. *See* TEX. ALCO. BEV. CODE ANN. § 2.02 (West 2007). The trial court granted summary judgment. On appeal, the Davises contend that the summary-judgment evidence raises fact issues for each element of their dram shop claim. Finding no error, we affirm.

**Background**

RPoint5Ventures does business in Galveston as the "Float Pool and Patio Bar". In December 2010, Ryan accompanied Katie Kimbrough and Alex Markle to the bar at just after 1:00 a.m. Katie ordered three shots of tequila and one beer. Katie and Alex each had one of the shots. Katie handed the beer to Ryan. Ryan drank his beer and danced and socialized with others at the bar. Ashley Ballard, the bartender that served the group, averred that Ryan did not exhibit any signs of obvious intoxication. Alex also averred that Ryan did not exhibit any signs of intoxication: Ryan "was not stumbling, falling down, being loud or belligerent, spilling his drinks nor slurring his speech." Ballard believed that Ryan was

2

capable of driving when the group left the bar. Mike Dean, an owner and manager of the bar, viewed a surveillance video of Ryan at the bar. He testified that Ryan appeared normal and did not exhibit any signs of intoxication. Videotape at the bar has Ryan present in the bar for about forty minutes.

In an affidavit supporting a warrant for Ryan's arrest, Officer Stewart avers that Alex told police that the group remained at the bar from about 11:30 p.m. until about 1:10 a.m.—and that the accident happened about twenty minutes after the group left the bar. As Ryan drove the group toward the Texas A&M–Galveston campus, he lost control of his truck. The truck slid off the road and rolled multiple times. Ryan and Katie were ejected from the truck.

Ryan sustained serious traumatic injuries and is in a semi-conscious vegetative state. Katie also sustained injuries. Katie testified that she had very little memory of that night.

At the scene of the accident, the police found several beer cans, both empty and full, in and around the vehicle. The police reported that the car smelled strongly of alcohol. Two hours after the accident, the police took a blood sample from Ryan at the hospital, and determined that his blood alcohol concentration was .15.

**Discussion**

The Dram Shop Act imposes liability on the provider of alcohol for injuries caused by a patron when:

> (1) at the time the provision occurred it was apparent to the provider that the individual being sold, served, or provided with an alcoholic beverage was obviously intoxicated to the extent that he presented a clear danger to himself and others; and
>
> (2) the intoxication of the recipient of the alcoholic beverage was a proximate cause of the damages suffered.

TEX. ALCO. BEV. CODE ANN. § 2.02(b) (West 2007).

The bar moved for summary judgment on both traditional and no-evidence grounds, and the trial court's order grants summary judgment without specifying any grounds. In its motion, the bar contended that the Davises adduced no evidence that Ryan exhibited any signs of obvious intoxication.

*Standard of review*

We review a trial court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life Accid. Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). Under the traditional standard for summary judgment, the movant has the burden to show that no genuine issue of material fact exists and that the trial court should grant a judgment as a matter of law. TEX. R. CIV. P. 166a(c); *KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999). We take as true all evidence favorable to

the nonmovant and resolve any doubts in the nonmovant's favor. *Dorsett*, 164 S.W.3d at 661; *Knott*, 128 S.W.3d at 215; *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997).

Traditional summary judgment is proper only if the movant establishes that no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). A defendant moving for traditional summary judgment must conclusively negate at least one essential element of each of the plaintiff's causes of action or conclusively establish each element of an affirmative defense. *Sci. Spectrum, Inc.*, 941 S.W.2d at 911.

A party may move for a no-evidence summary judgment on the ground that no evidence exists to support one or more essential elements of a claim or defense on which the opposing party has the burden of proof. TEX. R. CIV. P. 166a(i). A no-evidence summary judgment motion is essentially a motion for a pretrial directed verdict. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 581–82 (Tex. 2006). Accordingly, we apply the same legal-sufficiency standard of review that we apply when reviewing a directed verdict. *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005). Under that standard, summary judgment is proper if (1) there is a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere

scintilla, or (4) the evidence conclusively establishes the opposite of a vital fact. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003); *City of Keller*, 168 S.W.3d at 810.

*Analysis*

The critical focus in a dram shop inquiry is the point when the seller provided alcohol to the patron. *See* TEX. ALCO. BEV. CODE ANN. § 2.02(b)(1) (West 2007); *J.D. Abrams, Inc. v. McIver*, 966 S.W.2d 87, 92 (Tex. App.—Houston [1st Dist.] 1998, pet. denied) (holding that evidence did not raise a fact issue on dram shop liability when it showed that patron was intoxicated after car accident but not earlier when alcohol was provided). Circumstantial evidence can raise a fact issue about whether it was apparent that a person was obviously intoxicated at that point. *See Alaniz v Rebello Food & Bev., L.L.C.*, 165 S.W.3d 7, 14 (Tex. App.—Houston [14th Dist.] 2005, no pet.). An expert opinion about a person's blood alcohol concentration and the signs of intoxication a person would exhibit, when coupled with other evidence, can be circumstantial evidence of apparent, obvious intoxication. *See Fay-Ray Corp. v. Tex. Alco. Bev. Comm'n*, 959 S.W.2d 362, 368 (Tex. App.—Austin 1998, no pet.). But to raise a fact issue, the expert opinion may not be conclusory or speculative. *Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 729 (Tex. 2003); *Wilson v. Shanti*, 333 S.W.3d 909, 914 (Tex. App.—Houston [1st Dist.] 2011, pet. denied); *Alaniz*, 165 S.W.3d at 16

6

(holding expert opinion based on assumptions about person's drinking history on night of accident that were unsupported by record did not raise fact issue about whether it was apparent that person was obviously intoxicated).

Two witnesses at the bar, as well as Dean, who watched a surveillance video, testified that Ryan was not obviously intoxicated during the short time he remained at the bar. Ryan also did not personally order the one beer that he drank. Davises' expert extrapolated backward from the .15 as measured by the Galveston police two hours after the accident, and concluded that Ryan's blood alcohol concentration was in the range of .18 to .20 when the bar sold the beer to his companion.

But the expert did not link Ryan's level of intoxication to any apparent signs of intoxication. The expert avers that "the majority of individuals" with a blood alcohol concentration of .08 "would display some sign of intoxication," then concludes that Ryan was obviously intoxicated and that "this would be true in both [his] likely demeanor and behavior." Ryan's blood alcohol concentration is evidence that Ryan was intoxicated at the bar, but dram shop liability requires that the intoxication be obvious. *See McIver*, 966 S.W.2d at 91–92 (noting that dram shop standard of obvious intoxication is more difficult to prove than mere legal intoxication). Thus, the expert must adduce some evidence of conduct or signs of intoxication that Ryan would have displayed to controvert the bar's evidence that

7

Ryan did not exhibit any sign of intoxication. *See id.* The expert's conclusion about Ryan's drinking, which concedes one beer consumed at the bar, does not pin down the remainder of Ryan's drinking timeline, nor the likelihood of obviousness, given that Ryan was present at the bar a short time and did not interact with the bar's employees. For example, the expert assumes that Ryan consumed alcohol elsewhere before arriving at the bar, none upon leaving the bar, and reached his "peak alcohol concentration prior to the time of the accident." But he does not account for the timing of Ryan's other alcohol consumption, other than to observe that it happened "before" Ryan's arrival at the bar. It is undisputed that Ryan drank one beer at the bar. Without accounting for the timing of Ryan's other drinking and the duration and distance of Ryan's interactions with bar employees, the expert's conclusion that obvious intoxication "would be true in Ryan's likely behavior and demeanor" does not controvert the witness testimony that Ryan's intoxication was not obvious while he was present at the bar. *See Alaniz*, 165 S.W.3d at 16 (holding that expert's opinion based on facts unsupported by record failed to raise a fact issue). Accordingly, we hold that the trial court properly granted the bar's no-evidence motion for summary judgment.

**Conclusion**

We hold that the Davises failed to produce any evidence that it was apparent that Ryan was obviously intoxicated when served a beer at the bar. We therefore affirm the judgment of the trial court.

Jane Bland
Justice

Panel consists of Chief Justice Radack and Justices Bland and Huddle.