23046

Donald L. HOFER, Respondent v. James H. ST. CLAIR and Fred U. Beam, Appellants.

(381 S. E. (2d) 736)

Supreme Court

504

*Melvin L. Roberts*, York, *for appellants.*

*S. Jackson Kimball*, Rock Hill, *for respondent.*

Heard March 8, 1989.

Decided July 10, 1989.

TOAL, Justice:

The plaintiff, Donald Hofer, brought this action for breach of three contracts to sell real property against defendants, James H. St. Clair and Fred U. Beam. The questions on appeal are whether a partnership existed between the defendants; whether the actions of one partner were sufficient to bind the partnership; whether valid contracts for the sale of land existed; whether the defendants breached such contracts; and whether plaintiff was damaged and in what amount as a result of this breach. The Referee found for Hofer. The Circuit Court adopted the findings of the Referee. We affirm.

## FACTS

During the period of time the incidents which underlie this action occurred, Hofer was an engineer with the merchant marines. He alternated between four month periods of time at sea and four month periods at his home in South Carolina. During the periods Hofer was in South Carolina, he was very active in the real estate market purchasing and leasing residential property for investment. While he was at sea, his parents had a Power of Attorney to transact business for him. Hofer's mother managed Hofer's rental property.

St. Clair and Beam were partners in Rock Hill Paint and Repair. This partnership does insurance construction repair work. St. Clair and Beam were also active in the residential real estate market, buying and leasing property for investment.

In the early part of 1984, Hofer was in South Carolina. Through a local real estate agent, Hofer became aware that St. Clair and Beam were interested in selling several pieces of rental property they owned as joint tenants. When Hofer expressed an interest in the properties to the Realtor, the agent scheduled a meeting between Hofer, Hofer's mother, Beam and himself. The purpose of this meeting was to allow Hofer to inspect the various pieces of property.

As a result of this meeting, in February 1984, Hofer made offers through the real estate agent on the three pieces of property which form the basis of this action. St. Clair obtained these offers from the Realtor and discussed them with Beam. St. Clair made counteroffers on behalf of him-

self and Beam. The negotiating process consisted of several offers and counteroffers over the period of approximately a week, at the end of which Hofer and St. Clair met at the real estate agent's office. During this meeting, all of the changes to the original contracts were initialed and the contracts were signed by St. Clair. St. Clair also entered a management contract on the property with Hofer's mother during this meeting. Hofer left the meeting with the original contracts, and proceeded to a mortgage company, suggested by St. Clair, to make an application for financing. Immediately after the meeting, St. Clair executed a listing agreement with the real estate agent on the properties.

Shortly after this meeting, Hofer returned to sea, leaving a Power of Attorney with his parents to complete the purchases. Approximately one week later, a dispute arose. Mrs. Hofer became aware one of the properties did not have a heat pump as was represented on an MLS form Hofer had received from the real estate agent. Mrs. Hofer called St. Clair to question him about the discrepancy and demanded he either pay for the installation of a heat pump or reduce the purchase price of the property by the cost of such an installation. St. Clair told Mrs. Hofer her son could either buy the property, as it was, for the agreed upon price, or "the deal was off." Mrs. Hofer stated she could not agree to buy the property for the same price in a condition different from that represented to her son.

Several days later, Hofer's father contacted Beam to settle the misunderstanding. Beam told Hofer's father "the deal was off."

The defendants failed to convey the properties to Hofer, and sold them to a third party. Hofer brought suit for breach of contract.

The case was referred to a Referee to make findings of fact and conclusions of law and report the same to the Circuit Court. The Referee found as matters of fact that a partnership existed between the defendants; one of the businesses of this partnership was to buy, sell and hold real estate for investment; St. Clair entered into binding contracts for sale of partnership properties; St. Clair had the actual authority to bind the partnership in these contracts; the defendants breached the agreements in failing to convey

the properties to Hofer and by conveying them to another; Mrs. Hofer did not repudiate the contract by raising the question of the absence of the heat pump; and Hofer suffered damages in the amount of $15,050.00.

The Circuit Court adopted the Referee's findings of fact and conclusions of law as its own. This appeal by St. Clair and Beam followed.

On appeal, Beam and St. Clair allege the trial court erred in: (1) Finding a partnership existed between St. Clair and Beam, the business of which was to conduct real estate transactions; (2) Finding St. Clair's actions bound the partnership to valid contracts for the sale of real property; (3) Finding defendants breached these contracts, and; (4) Finding Hofer suffered damages in the amount of $15,050.00 as a result of the breach.

## LAW/ANALYSIS

### Standard of Review

Contract actions are actions at Law. *Small v. Springs Industries, Inc.*, 292 S. C. 481, 357 S. E. (2d) 452 (1987). In actions at law

> tried without a jury, the findings of fact of the judge will not be disturbed upon appeal unless found to be without evidence which reasonably supports the judge's findings. The rule is the same whether the judge's findings are made with or without a reference.

*Townes Assoc. Ltd. v. City of Greenville*, 266 S. C. 81, 221 S. E. (2d) 773 (1976).

1. Partnership's Existence and Business

South Carolina's Uniform Partnership Act defines a partnership as "an association of two or more persons to carry on as co-owners a business for profit." S. C. Code Ann. § 33-41-210 (1987). In determining the existence of a partnership, joint tenancy "does not of itself establish a partnership, whether such co-owners do or do not share any profit made by the use of the property." S. C. Code Ann. § 33-41-220(2) (1987).

The existence of a partnership is a question of fact. The lower court found the defendants were operating a part-

nership, called Rock Hill Paint & Paper, the business of which was, in part, the ownership, purchase and sale of rental real estate properties. These findings are amply supported by the record.

The evidence supports the lower court's finding that a
■ partnership existed between St. Clair and Beam.
Hofer testified that during his initial meeting with Beam to view the property, Beam gave him a card for Rock Hill Paint and Repair with the names "Fred and Jim" on it. Hofer testified Beam referred on many occasions during this meeting to his "partner," Jim, and to Rock Hill Paint & Repair. Both Beam and St. Clair admitted at trial they were partners in Rock Hill Paint & Repair.

The evidence also supports the lower court's finding
■ that the business of the partnership was, in part, to
purchase, sell, lease and hold real estate for investment. The evidence showed the rental income from the properties at issue, and other jointly owned properties, was shown on the tax returns and books of Rock Hill Paint and Repair. Rental income was deposited into, and expenses were paid from, the partnership bank accounts.

■ Authority of a Partner to Bind the Partnership to a Contract for the Sale of Real Property
South Carolina Code Ann. § 33-41-310(1) and (2) (1987) states:

> (1) Every partner is an agent of the partnership for the purpose of its business and the act of every partner, including the execution in the partnership name of any instrument, for apparently carrying on in the usual way the business of the partnership of which he is a member binds the partnership, unless the partner so acting has in fact no authority to act for the partnership in the particular matter and the person with whom he is dealing has knowledge of the fact that he has no such authority.
> (2) An act of a partner which is not apparently for the carrying on of the business of the partnership in the usual way does not bind the partnership unless authorized by the other partners.

Section 33-41-310 sets out two ways in which one partner may bind the partnership. First, if a partner has the actual authority to bind the partnership, that partner's acts will bind the partnership. Second, even if a partner lacks the actual authority to bind the partnership, when a partner is apparently carrying on the business of the partnership in the usual way, and the one with whom he is transacting business does not know the partner lacks actual authority, the partner's acts will bind the partnership.

The lower court found that St. Clair had the actual authority to bind the partnership to the contracts for the sale of partnership land. The evidence on this point was conflicting, however, the fact finder who heard the testimony is in the best position to judge the demeanor and veracity of the witnesses. *McAlister v. Patterson,* 278 S. C. 481, 299 S. E. (2d) 322 (1982); *Peay v. Peay,* 260 S. C. 108, 194 S. E. (2d) 392 (1973).

The lower court's findings, despite the contradiction in evidence, are supported by the record. The evidence showed that in the course of this transaction St. Clair made counteroffers, signed a listing agreement and a management agreement on behalf of both of the partners. In the past, St. Clair had alone executed contracts for the sale of partnership property and other partnership contracts on behalf of both partners.

As the lower court's finding that St. Clair had the actual authority to bind the partnership is supported by the record, this Court need not reach the question of whether St. Clair's actions might have bound the partnership under an apparent authority theory.

3. Breach of Contract

St. Clair and Beam contend that should this Court determine valid contracts existed between the parties, it was Hofer who breached them. First, they argue that Hofer failed to make a loan application as required by the contracts. The evidence showed Hofer submitted a loan application to a mortgage company suggested by St. Clair, which was substantially completed by the time Hofer left for sea. All that remained to be submitted in order to complete the application were appraisals on the properties. Hofer's parents held a Power of Attorney for Hofer, which

would have allowed them to complete the application or to obtain other financing. Hofer testified he could have obtained financing easily and quickly through his usual lender had he desired. Hofer testified that after Beam and St. Clair rescinded the contracts, there was no point in completing the application process.

Where one party's repudiation of a contract contributes materially to the nonoccurrence of a condition precedent to his duty of performance, the nonoccurrence of the condition is excused. *Champion v. Whaley*, 280 S. C. 116, 311 S. E. (2d) 404 (Ct. App. 1984). Thus, Hofer's failure to complete the loan application following Beam and St. Clair's repudiation of the contract is excused and does not amount to a breach by Hofer.

Next, appellants argue that when Mrs. Hofer raised the issue of the missing heat pump, she was making a counteroffer to them which allowed them to withdraw their prior offer, or, alternatively, her actions amounted to a repudiation of the contract. The lower court determined a binding contract was formed at the last meeting of Hofer and St. Clair. This finding is supported by the evidence that all of the changes in the contract were initialed by both parties and signed at this meeting. Therefore, Mrs. Hofer's actions some period following this date could not be construed as an additional offer. The terms of the contract were fixed. Further, the lower court specifically found Mrs. Hofer was not repudiating the contract, but was raising the absence of the heat pump in the context of a breach by defendants. Again, this finding is supported by the record. Hofer, his mother, and the real estate agent testified regarding the circumstances surrounding the heat pump misunderstanding. St. Clair testified he told Mrs. Hofer that her son could buy the property, as is, for the stated price or the deal was off. Believing that St. Clair was attempting to alter the deal, Mrs. Hofer would not agree. Later, when Hofer's father tried to settle the matter, Beam told him the deal was off.

The lower court found, and it was uncontradicted, that the defendants did not convey the property at issue to Hofer as provided in the contracts. This failure to convey the properties constituted a breach of the contracts by the defendant.

The lower court's finding that Beam and St. Clair breached the agreement, and that Hofer did not breach the agreement, are supported in the record.

4. Damages

Hofer presented expert testimony regarding the value of the properties. The expert testified the properties were worth approximately $24,100.00 more than the contract price. This value was determined by appraisals made by the expert approximately two years following the breach. The expert also testified to the appreciation real property had experienced during this time period.

The Referee determined Hofer had suffered damages in the amount of $15,050.00 as a result of the breach.

Beam and St. Clair make two arguments opposing this finding. First, they argue the property actually sold in August of 1984 for $6,950.00 less than offered to them by Hofer, so Hofer could not have suffered a loss. Second, they contend the appraisals the lower court relied upon to determine damages were an improper basis for finding damages, as they were made two years following the proposed date of sale. Neither of these arguments has merit.

The argument that Beam and St. Clair sold the property to a third party for less than Hofer's offer four months later, is not properly before this Court. Appellants offered no evidence before the Referee as to the sales price to the third party. Appellants' exceptions to the Referee's Report mention the sale price for the first time. Appellants' exception stated the Referee erred in considering the appraisals offered by Hofer's expert when the property actually sold for less than the price Hofer offered. In settling the record, the appellants included the deed from this later sale which was never presented to the Referee.

Despite this conceded reliance on evidence not admitted before the referee, appellants argue this information is properly before this Court under Rule 53(e)(2), SCRCP which allows a circuit court to adopt, reject or modify the report of the referee or to receive further evidence. The Circuit Court's Order adopts the Referee's Report, stating its adoption is based on the Court's review of the transcripts and arguments of counsel. The Circuit Court neither received nor considered this additional evidence.

Appellants also rely on *Sweat v. Crawford*, 292 S. C. 324, 356 S. E. (2d) 147 (Ct. App. 1987) for the proposition that a party may, prior to a hearing on the exceptions to a referee's report, move that the transcript of the proceedings be amended or corrected if the transcript contained omissions or errors and that the circuit court has the implied authority to correct the record under Rule 53(e)(2). This proposition does not aid appellants. There was no error or omission in the transcript; appellants simply did not offer the evidence before the referee. Further, there is nothing in the record to suggest appellants moved for such a correction.

While this Court will assume that when the record is settled, all corrections have been made, except upon appeal from an order settling the record, *Andrews v. Sumter Commercial & Real Estate Co.*, 87 S. C. 301, 69 S. E. 604 (1910), this Court will take notice that something within the record was *clearly* not introduced into evidence below. To hold otherwise would encourage litigants to attempt to supplement the record with evidence they failed to introduce below. It would be utterly inappropriate for an appellate court to reverse a trial court's decision in reliance on evidence never submitted to the trial court for its consideration.

. Appellants' second argument, that the appraisals were made too remote in time, is likewise not properly before this Court, as appellants made no exception which could reasonably be construed as preserving this issue. *Kneece v. Kneece*, 296 S. C. 28, 370 S. E. (2d) 288 (Ct. App. 1988).

In any event, the admission of evidence is a matter addressed to the sound discretion of the trial judge and absent clear abuse of discretion amounting to an error of law, the lower court's ruling will not be disturbed on appeal. *South Carolina State Highway Dept. v. Wilson*, 254 S. C. 360, 175 S. E. (2d) 391 (1970). In *Wilson*, this Court held the trial court did not abuse its discretion in allowing into evidence appraisals on the property at issue made nine years before the critical date for assessing damages. The appraisals at issue here were made approximately two years after the date on which damages should be determined. The lower court did not abuse its discretion in considering these appraisals.

The evidence supports the lower court's determination of damages. The only evidence of value before the Referee showed the property was worth approximately $24,000.00 more than the contract price two years following the breach. The Referee adjusted the amounts provided in the appraisals downward in awarding damages.

For the foregoing reasons, the opinion of the lower court is Affirmed.

GREGORY, C. J., and HARWELL, CHANDLER and FINNEY, JJ., concur.