23437

Joan CARLYLE, as Administratrix of the Estate of Mark Carlyle, Deceased, Respondent v. The TUOMEY HOSPITAL, Petitioner.

(407 S.E. (2d) 630)

Supreme Court

*Charles E. Carpenter, Jr.,* and *Deborah L. Harrison,* both of *Richardson, Plowden, Grier & Howser,* Columbia, and *M.M. Weinberg, Jr.,* of *Weinberg, Brown & McDougall,* Sumter, *for petitioner.*

*J. Edward Bell, III,* of *Bell & Bagley,* Sumter, *for respondent.*

Heard March 19, 1991; Decided July 22, 1991.

Rehearing Denied Aug. 15, 1991.

*Per Curiam:*

Respondent Joan Carlyle, administratrix of the estate of Mark Carlyle, deceased, instituted this action under the wrongful death and survivorship statutes. The jury awarded respondent $100,000 for each cause of action. The Court of Appeals affirmed, Memo. Op. No. 90-MO-067 (Ct. App. Filed April 16, 1990). Petitioner Tuomey Hospital moved for Stay of Remittitur and Rehearing, and the Motion was denied on

June 20, 1990. The case is before this Court on a writ of certiorari from the Court of Appeals. We affirm in part, reverse in part and remand.

Respondent filed suit seeking recovery for damages caused by petitioner's alleged negligence which resulted in the death of respondent's decedent. Subsequently, the case was removed from the active trial roster pursuant to SCRCP 40(c)(3). The case was later restored by order of the circuit court over petitioner's objection. Petitioner appealed and moved for a remand.

This Court dismissed the appeal upon remanding the case in a scheduling order, the pertinent portion of which provided as follows:

\*   \*   \*   \*   \*

2. Within thirty days after the case is restored to the roster, each party shall declare the names of expected lay and expert witnesses.
3. Within ninety days thereafter, each party shall complete discovery of the witnesses named.

\*   \*   \*   \*   \*

The case was restored to the active roster on July 17, 1987, and in due course proceeded to trial.

The trial record reflects that Mark Carlyle was admitted to Tuomey Hospital on September 20, 1983, for treatment of extensive decubitus, commonly called bedsores. The decubitus was a complication of spastic quadriparesis, an incurable, progressive paralytic disease which gradually paralyzes the body from the feet up. At the time of his admission, Mark was paralyzed from the waist down and incontinent. On September 24, 1983, during the 3:00 P.M. to 11:00 P.M. nursing shift, an external device, known as a condom catheter, had been affixed to Mark's penis. On September 25, 1983, a nursing supervisor noticed that Mark's penis exhibited discoloration and blistering with swelling. The strap used to secure the catheter had been wrapped around Mark's penis twice. The strap of a correctly placed condom catheter wraps around the penis once.

On September 27, 1983, Dr. Jerry Jackson, a urologist, examined Mark and recommended that he be transferred to

Norfolk General Hospital for reconstructive penile surgery. Dr. Jackson testified that half of Mark's penis was black and ischemic and that an indentation circled its base at the origin of discoloration. Dr. Jackson's opinion was that the injury was a recent one. He was not aware of the events which had transpired during the thirty-six hour period preceding his examination.

On October 6, 1983, Mark was transferred to Norfolk. Dr. David A. Gilbert, the plastic surgeon who performed the surgery, testified that Mark's penis was ulcerated and necrotic. Reconstruction consisted of debridement, or removal of dead subcutaneous tissue in two separate procedures; a cadaver graft over the penis shaft in a third procedure; and a skin graft from Mark's thigh to the penis in a fourth procedure.

It was Dr. Gilbert's opinion that the condition resulted from the catheter being secured too tightly or being left on too long without being changed. He testified that Mark's penis would have become necrotic after six to ten hours if the catheter had been secured too tightly. Dr. Gilbert testified that Mark's penis was disfigured, probably irreparably damaged, and that confusion, anxiety, distress and fear of losing his penis had a traumatic psychological effect on Mark.

According to Dr. Gilbert, 60 to 70 percent of Mark's care at Norfolk was devoted to the condition involving his penis, and the remaining 30 to 40 percent was related to treatment of the pre-existing decubitus. He testified further that part of the reconstructive treatment could have been performed on an outpatient basis if decubitus had not required hospitalization.

Norfolk returned Mark to Tuomey on December 10, 1983, and he was discharged in January, 1984. He was cared for at home by a home health care employee, his mother and sister. Mark was hospitalized for a brief period in February, 1984, readmitted in April, 1984, and died on September 11, 1984. The hospital discharge summary lists the cause of death as septicemia with urinary tract infections, multiple decubiti, and pneumonia as contributing factors.

Dr. Phillip Brandt, Mark's internist, testified that pneumonia was the immediate cause of death. Quadriparesis had advanced to Mark's chest area, and he was unable to clear his lungs by coughing. Mark's parents refused to allow a tracheotomy. According to Dr. Brandt, Mark would eventually

have succumbed to quadriparesis, but a tracheotomy would have prolonged his life. He testified further that infections at any site in the body could contribute to deterioration and ultimately to the cause of death. Dr. Brandt gave his opinion that any infection of the urinary tract caused by the suprapubic tube in place during penile reconstruction did not contribute to Mark's pneumonia.

Dr. Joseph E. Davis, respondent's expert witness, responded to a hypothetical question based upon records and excerpts from depositions supplied by the respondent. Dr. Davis testified, based upon reasonable medical certainty (1) that the injury to Mark's penis was caused by the condom catheter being incorrectly placed; (2) that the damage to the penis would have occurred after the catheter had been in place between ten and twenty-four hours; (3) that a suprapubic tube could cause septicemia and lead to pneumonia because infection caused by the tube could weaken the body and allow other infections to occur in the respiratory tract and lungs; and (4) that the suprapubic tube and septicemia were significant contributing factors to Mark's death. Dr. Davis also testified that when there are multiple infections, each of which could cause septicemia, it cannot be said with reasonable medical certainty that any one of the sources was the actual cause of septicemia.

On appeal, petitioner alleges the trial court abused its discretion in allowing Dr. Davis to testify, in violation of paragraph 3 of the Supreme Court's Scheduling Order (the Order). Petitioner contends Dr. Davis provided the only evidence connecting Mark's death with petitioner's negligence and that it was prejudiced thereby. Paragraph 3 of the Order provides that within ninety days, each party shall complete discovery of the witnesses named. The ninety days expired on November 17, 1987. Petitioner maintains that respondent's counsel did not personally contact Dr. Davis until December, 1987, or January, 1988, and did not provide any information to Dr. Davis until early 1988. Consequently, petitioner argues, Dr. Davis was not "available for deposition" and discovery could not have been completed prior to November 17, 1987.

Respondent contends the name of Dr. Joseph E. Davis was included with the names of witnesses furnished within the thirty-day period provided in paragraph 2 of the Order. Re-

spondent argues further that Dr. Davis' name was initially provided pursuant to the Circuit Court Order of April 28, 1987, requiring the name of expert witnesses to be disclosed prior to May 15, 1987.

Under South Carolina law, the admission of expert and other evidence "is a matter addressed to the sound discretion of the trial judge and absent clear abuse of discretion amounting to an error of law, the lower court's ruling will not be disturbed on appeal." *Hofer v. St. Clair*, 298 S.C. 503, 381 S.E. (2d) 736, 742 (1989); *see also Tribble v. Hentz*, 285 S.C. 616, 330 S.E. (2d) 560, 562 (1985) (where a party fails to timely disclose identity of expert witness, the question of whether the witness' testimony may be received is left largely to the discretion of the trial judge).

The Order of this Court is unambiguous and purports to do nothing more than provide scheduling for a case complicated by numerous potential witnesses residing in multiple jurisdictions. The Order only contemplates that each party will have its witnesses available to respond to discovery requests submitted by the opposing party.

It is undisputed that respondent disclosed to petitioner prior to August 17, 1987, the name of Dr. Joseph E. Davis as one of respondent's expert witnesses; thus, petitioner cannot claim surprise. The record reflects that petitioner did not attempt to depose Dr. Davis prior to November 17, 1987. Moreover, petitioner did not serve the respondent with a notice of deposition for Dr. Davis and, in fact, expressly informed the respondent that it would not depose Dr. Davis.

Additionally, petitioner has not shown that it was prejudiced by the admission of Dr. Davis' testimony. Although Dr. Davis related the Tuomey injury to factors contributing to the decedent's death, he also testified that where there are multiple infections, it cannot be said with reasonable medical certainty that any one of the sources actually caused septicemia. Proof that an error caused the appellant prejudice is a prerequisite to reversal based on error where the trial court's discretion is involved. *Dunn v. Dunn*, 298 S.C. 499, 381 S.E. (2d) 734 (1989).

When considered in conjunction with the entire record and the totality of the circumstances, we conclude that the trial court did not abuse its discretion in admitting Dr. Davis' testi-

mony. The decision of the Court of Appeals is affirmed.

Next, petitioner asserts the trial court erred in admitting into evidence a Norfolk General Hospital bill containing charges for the penile reconstruction and treatment of decubitus without establishing any foundation for the portion related to the penile reconstruction. We agree.

The admission of evidence is a matter left to the discretion of the trial judge and, absent clear abuse, will not be disturbed on appeal. *Hofer v. St. Clair, supra.* Nevertheless, evidence presented must be sufficient to enable the factfinder to make a determination with reasonable certainty or accuracy. "Neither the existence, causation nor amount of damages can be left to conjecture, guess or speculation." *Gray v. Southern Facilities, Inc.*, 256 S.C. 558, 183 S.E. (2d) 438 (1971).

> Medical bills not clearly identified by medical testimony, or otherwise, as being connected with the tortious act which resulted in injuries under litigation are generally held inadmissible, especially where there is evidence that plaintiff was treated for a condition unrelated to the injuries sustained in the accident.

22 Am. Jur. (2d) *Damages* § 933 (1988).

The aggregate Norfolk bill for penile reconstruction and treatment of the pre-existing decubitus showed no apportionment of the cost for either. The entire twenty-two page bill containing 1,309 entries and charges totaling $42,985.33 was admitted into evidence without a proper foundation upon which the jury could arrive at a determination with reasonable accuracy. Dr. Gilbert's testimony that 60 to 70 percent of Mark's care was allocated to treatment involving reconstructive surgery is insufficient to allow a jury to determine charges and apportion damages for the penile injury.

We conclude that the lack of a proper foundation for admission of the Norfolk bill and the absence of adequate identification of charges related to penile reconstruction allowed the jury to arrive at a verdict through surmise, conjecture, or speculation. Accordingly, the judgment and verdict in the survival action are reversed and remanded to the circuit court.

For the foregoing reasons, we affirm the judgment and verdict in the action for wrongful death; the cause of action for

pain and suffering is reversed and remanded to the circuit court.