671 S.E.2d 380

Jon E. HARTFIELD, by and through his Conservator, Haskell L. HARTFIELD, and Haskell L. Hartfield, individually, Appellants,

v.

Glenn McDONALD, d/b/a The Carolina Lounge, and The Getaway Lounge & Grill, Inc., and Shou–Mei Morris, Individually and as President of the Getaway Lounge & and Grill, Inc., Robert C. Cockrell, individually and d/b/a Williams Package and South Pointe Pub, Defendants,

of whom, The Getaway Lounge & Grill, Inc., and Shou–Mei Morris, individually and as President of The Getaway Lounge & Grill, Inc., and Robert C. Cockrell, individually and d/b/a Williams Package and South Pointe Pub are, Respondents.

No. 4469.

Court of Appeals of South Carolina.

Heard Oct. 21, 2008.

Decided Dec. 17, 2008.

Rehearing Denied Jan. 27, 2009.

Jon E. Newlon, of Greenwood, for Appellants.

C. Rauch Wise and Marvin R. Watson, both of Greenwood, for Respondents. .

HEARN, C.J.:

Jon Hartfield and Haskell L. Hartfield, individually and as Conservator to Jon Hartfield, (collectively referred to as Hartfield) appeal the circuit court's grant of a directed verdict in favor of Respondents Robert Cockrell, individually and d/b/a Williams Package and South Pointe Pub (collectively referred to as the Pub). Hartfield contends the circuit court erred in directing a verdict in favor of the Pub because there was sufficient evidence presented to the court to survive the Pub's motion for a directed verdict. Hartfield also contends the circuit court erroneously required direct evidence of service of alcohol and level of intoxication. We affirm.

## FACTS

Hoyt Helton was a frequent drinker who many considered an alcoholic. Helton's wife testified that over the course of their eleven-year marriage, Helton drank Bud Light or Budweiser beer every day, and had gotten in trouble for drinking and driving "a number of times." She also described Helton's drinking style as a "sipper," and said that he weighed between one-hundred thirty, and one-hundred fifty pounds. On July 11, 2003, after an evening out at several drinking establishments, Helton crossed the centerline of a highway in a car he was driving. Helton's vehicle struck a car driven by Laura Riddle, and in which Jon Hartfield was a passenger. Helton died at the scene. Testing conducted after the accident revealed Helton's blood alcohol content (BAC) was .212. Riddle and Hartfield were seriously injured, and Hartfield was in a coma for several months after the accident. As a result of his injuries, Hartfield requires assisted living arrangements for the remainder of his life.

On the day of the accident, Helton left his house sometime between 1:15 and 5:45 p.m., according to his wife. Cockrell, one of two owners and managers of the Pub, was tending bar at the Pub on that particular day and testified Helton arrived between 4 and 4:15 p.m. Helton exited the Pub at approximately 5:30 p.m. Cockrell did not see Helton again until he was closing for the night at 7 p.m., when he saw Helton sitting on a bench in front of the Pub. In addition, Cockrell testified he neither served Helton a beer, nor saw him drinking while he was inside the establishment, and testified Helton was not in possession of a beer on the bench when Cockrell left.

Brad Harrison, a drinking buddy of Helton's, testified he arrived at the Pub that day around 6 p.m. and Helton was sitting outside on a bench. Harrison recalled Helton was not drinking, and that from the time Harrison arrived, until 7:10 p.m. when he left, Helton did not drink a beverage of any kind. Thereafter, Helton made his way to the The Getaway Lounge & Grill, Inc. (The Getaway), where the bartender that evening, Diane Bice, testified Helton arrived between 7:15 and 7:30 p.m. According to her testimony, Helton left The Getaway around 8 p.m., and in the time he was there, Bice neither served nor observed Helton drinking. Harrison, however, testified he arrived at The Getaway at 8 p.m., and while he was there, Helton was sitting at the bar and consumed two to three beers. Both Harrison and Bice testified Helton did not appear intoxicated while at The Getaway.

Finally, Helton made his way to The Carolina Lounge (Carolina), where bartender Billy McDonald testified Helton arrived at approximately 10 p.m. and left shortly thereafter around 10:15 p.m. McDonald recalled Helton sat at the bar and was not served a beer; however, Highway Patrolman Tony Keller testified he spoke with McDonald on the phone shortly after the accident, and McDonald admitted Helton had been served and had consumed one beer at Carolina. McDonald also told Keller that Helton was sober when he left Carolina at 10:15 p.m. The accident occurred at approximately 10:51 p.m.

Hartfield filed suit against Cockrell, individually, and the Pub; Shou–Mei Morris, individually, and The Getaway Lounge & Grill, Inc.; and Glenn McDonald, d/b/a The Car-

olina Lounge. Hartfield contended each of the defendants was negligent, grossly negligent, careless, reckless, willful and wanton, under a rubric of dram shop liability, and that the defendants' actions were the direct and proximate cause of the injuries and damages he received. At the close of Hartfield's case, the circuit court granted Cockrell's and the Pub's motions for directed verdict. A jury verdict was obtained against Morris and The Getaway, and the circuit court declared a mistrial as to McDonald and Carolina. Only the circuit court's grant of a directed verdict in favor of the Pub is before this court on appeal.

## LAW/ANALYSIS

Hartfield contends the circuit court erred in directing a verdict in favor of the Pub because there was sufficient evidence presented to the court from which a reasonable juror could find Helton appeared visibly intoxicated and was served alcohol at the Pub. Hartfield also contends the circuit court erred by requiring direct evidence of service of alcohol and level of intoxication, rather than finding the circumstantial evidence provided at trial created a sufficient jury question. . We disagree.

Section 61–4–580 of the South Carolina Code (Supp.2007) prohibits the sale of beer or wine to an intoxicated person. That section specifically provides:

Prohibited acts.

No holder of a permit authorizing the sale of beer or wine or a servant, agent, or employee of the permittee may knowingly commit any of the following acts upon the licensed premises covered by the holder's permit:

. . .

(2) sell beer or wine to an intoxicated person[.]

S.C.Code Ann. § 61–4–580(2). This Court has previously held that § 61–4–580's predecessor supplied a private cause of action for civil liability to a third party who is injured as a result of a violation of the statute. *Daley v. Ward*, 303 S.C. 81, 83–84, 399 S.E.2d 13, 14 (Ct.App.1990) (interpreting S.C.Code Ann. § 61–9–410 (1976)).

As indicated above, testimony from all parties who witnessed Helton on the night of the accident was that he was neither visibly intoxicated, nor actually served alcohol while at the Pub. As a result, Hartfield called a series of experts to establish Helton's intoxication at the time he died, and by virtue of his height, weight, drinking style, and the night's general timeline, introduced circumstantial evidence to prove Helton would have been visibly intoxicated during the time he was at the Pub. Dr. William Brewer was qualified before the court as an expert in toxicology. Brewer testified as to the general effects of alcohol on people based on their physical characteristics, as well as the physical manifestations an intoxicated person would exhibit given the level of his or her intoxication. Brewer then explained to the jury how retrograde extrapolation [1] could be used to determine the level of intoxication of a person at any point during the night.

The circuit court ultimately prevented parts of Brewer's retrograde extrapolation analysis from introduction before the jury. Hartfield contends the proffered circumstantial evidence may be used to establish service of alcohol and the level of a person's intoxication at the time of service. In support of this contention, Hartfield points to several other courts and jurisdictions that have allowed the introduction of circumstantial evidence in dram shop cases. *See Alaniz v. Rebello Food & Beverage, L.L.C.,* 165 S.W.3d 7 (Tex.App.2005); *Romano v. Stanley,* 90 N.Y.2d 444, 661 N.Y.S.2d 589, 684 N.E.2d 19 (1997); *People v. Ladd,* 89 N.Y.2d 893, 653 N.Y.S.2d 259, 675 N.E.2d 1211 (1996). In addition, Hartfield cites *Daley v. Ward,* which states a jury could determine from circumstantial evidence whether a person was visibly intoxicated such that a prudent man would have known of his condition. *Daley,* 303 S.C. at 87, 399 S.E.2d at 16. However, in each of the cases cited by Hartfield, the sale or consumption of alcohol at the establishments in question was either admitted to, or proven

---

1. Retrograde extrapolation begins with the known variable of what a person's BAC is at the time of testing, and then extrapolates that figure back, taking certain assumptions and known variables into consideration, in order to create a drinking timeline as a rough estimate of what the person's BAC would have been at any point during the day of drinking.

by other evidence. We find Hartfield's lack of evidence as to the Pub's sale of alcohol fatal to his argument.

Moreover, each of the cases cited by Hartfield is factually distinguishable from the case at hand. In *Daley,* this court held that the circuit court erred in its response to a jury question, because it removed from the province of the jury the issue of whether circumstantial evidence could establish visible intoxication. *Daley,* 303 S.C. at 87, 399 S.E.2d at 16. However, the intoxicated patron admitted that he drank nine beers in the five hours he was present in the establishment. *Id.* at 83, 399 S.E.2d at 14. In addition, the accident occurred only fifteen to twenty minutes after the patron left, and the establishment was the only one which the patron frequented that evening. *Id.* In *Alaniz,* the Texas Court of Appeals found that the temporal proximity between the patron's exit from the establishment, and a convenience store video captured after the accident occurred, some fifty to fifty-five minutes after the patron left, was too great. *Alaniz,* 165 S.W.3d at 15. The *Alaniz* court noted that "although evidence of [patron]'s obvious intoxication and the requisite proximate causation may be established by circumstantial evidence, the evidence must transcend mere suspicion and conjecture." *Alaniz,* 165 S.W.3d at 14–15.

In *Romano,* the Court of Appeals in New York also found that circumstantial evidence was admissible to prove intoxication; however, it expressly rejected as speculative and conclusory, evidence such as the retrograde analysis in the case at hand, because the academic conclusion of a person's level of toxicity, arrived at after-the-fact, was not based on any facts or data contemporaneous to the sale of the alcohol. *Romano,* 661 N.Y.S.2d 589, 684 N.E.2d at 22; *see also Sorensen v. Denny Nash, Inc.,* 249 A.D.2d 745, 671 N.Y.S.2d 559, 560–61 (1998) (applying the analysis in *Romano* ). Finally in *Ladd,* retrograde analysis evidence was admitted as evidence of what the person's intoxication would have been when the accident occurred, where the BAC test was not administered until later; however, objections to this evidence were not properly preserved, so the *Ladd* court did not rule on its propriety. *Ladd,* 653 N.Y.S.2d 259, 675 N.E.2d at 1213.

Section 61–4–580(2) clearly states that an actual *sale* of alcohol to an intoxicated person is prohibited. (emphasis added). Even taking the evidence at trial in the light most favorable to Hartfield, as we are required to do on review of a motion for a directed verdict, the record is simply devoid of any evidence that the Pub actually sold Helton alcohol while he was there, or that Helton was drinking while present. As a result, we need not decide whether retrograde analysis would be admissible in a proper case because, in the absence of evidence of a sale, the directed verdict was properly granted.

Accordingly, the decision of the circuit court is

**AFFIRMED.**

HUFF, J., and GEATHERS, J., concur.