697 S.E.2d 558

**Jon E. HARTFIELD, by and through his Conservator, Haskell L. Hartfield and Haskell L. Hartfield, Individually, Respondents,**

v.

**The GETAWAY LOUNGE & GRILL, INC., Shou Mei Morris, individually and as President of The Getaway Lounge & Grill, Inc., Appellants.**

No. 26836.

Supreme Court of South Carolina.

Heard June 11, 2009.

Decided July 26, 2010.

Rehearing Denied Aug. 19, 2010.

C. Rauch Wise, of Greenwood, for Appellants.

Jon Eric Newlon, of McCravy Newlon & Sturkie Law Firm, of Greenwood, for Respondents.

Chief Justice TOAL.

After visiting a number of bars one night in July 2003, Hoyt Helton (Helton) drove his vehicle across the center line and struck a car in which John Erik Hartfield (Hartfield) was a passenger. Helton died at the scene and a South Carolina Law Enforcement Division (SLED) toxicologist recorded his blood alcohol content (BAC) at .212. Hartfield, who suffered serious injuries, and his father (Respondents) filed suit against three bars Helton visited that evening. Respondents were awarded a $10 million verdict against The Getaway Lounge & Grill (The Getaway).[1] The trial court also granted Respondents' motion to pierce the corporate veil of The Getaway.

---

1. The trial court granted a directed verdict motion for the defendant South End Pub which was affirmed by the court of appeals in *Hartfield ex rel. Hartfield v. McDonald*, 381 S.C. 1, 671 S.E.2d 380 (Ct.App.2008). However, the jury could not reach a verdict as to Carolina Drive–In. The instant case concerns only the claim against The Getaway.

We certified this case for review pursuant to Rule 204(b), SCACR.

## FACTS/PROCEDURAL HISTORY

At trial, Helton's wife testified that her husband would typically start drinking around noon and would usually leave home around 4:00 or 4:30 p.m. to go to his favorite bars. She had no recollection of her husband drinking at home on the day of the accident.

Other testimony established that Helton's first stop the day of the accident was Williams Package and South End Pub (South End Pub), one of his regular stops. Robert Cockrell (Cockrell), owner and operator of the South End Pub, testified that Helton arrived around 4:00 or 4:15 p.m. and stayed inside until 5:30 p.m., when he became angered by another person at the bar and walked out. Helton's friend, Brad Harrison (Harrison), found Helton sitting outside the entrance to the South End Pub when Harrison arrived around 6:00 or 6:15 p.m. Later, Cockrell saw Helton on the bench when he closed the establishment at 7:00 p.m. Cockrell testified that Helton was not served a beer that day, Helton did not show up with a beer, and Helton was not drinking a beer when Cockrell saw him on the bench as he was closing up. Cockrell also testified that when Helton arrived at the bar, he did not appear to be intoxicated, though he talked about being sick and was seen sitting at a table, leaning over, and holding his stomach.

Helton's second stop was The Getaway where he arrived between 7:15 and 7:30 p.m. Dianna Bice (Bice), one of the owners of The Getaway, testified she was at the bar that night, never saw Helton drinking, and he did not appear intoxicated. Harrison testified that when he arrived at The Getaway at approximately 8:00 p.m., Helton was sitting at the bar drinking a beer. He recalled that Helton had three beers while at The Getaway and did not appear intoxicated. Harrison and Helton left The Getaway at the same time, which Harrison testified was before 9:30 p.m. Trooper Tony Keller (Keller), who investigated the accident, testified that Harrison told him he left The Getaway between 9:30 and 10:00 p.m.

Helton's final stop the evening of the accident was the Carolina Drive–In. Billy McDonald (McDonald) was tending

bar that evening and testified that Helton arrived around 10:00 p.m. According to McDonald's trial testimony, Helton stayed at the Carolina Drive–In only ten or fifteen minutes and did not have a beer. However, Keller testified that McDonald informed him that Helton had one beer at the Carolina Drive–In. McDonald stated that he did not recognize any problems in the way Helton walked into the bar. Helton departed Carolina Drive–In around 10:10 or 10:15 p.m. After leaving Carolina Drive–In, Helton placed a cell phone call to his wife and left a voice message. Keller testified that, after listening to the message, he had no doubt that Helton was intoxicated.

The crash occurred at approximately 10:51 p.m. Helton died at the scene and Hartfield was seriously injured. Keller arrived at the scene shortly after the accident and stated that he found no cups or alcohol containers. Fluid samples revealed Helton's BAC to be .212 at the time of the collision. Keller testified that paramedics extracted Hartfield from the car and transported him from the scene by helicopter. Hartfield's father explained that his son spent approximately ten months in the hospital following the accident. For roughly six months, Hartfield was in a coma. Today, Hartfield still requires care, wears a leg brace, is unable to drive, and has problems with short term memory.

At trial, Respondents called Dr. William Brewer (Brewer), a chemistry instructor at the University of South Carolina, who teaches forensic chemistry. Brewer was previously a toxicologist at the Clemson Veterinary Diagnostic Center and with SLED. Beginning with Helton's BAC at the time of death, Brewer used a method called "retrograde extrapolation" to determine how many beers Helton would have to have consumed over the hours preceding the accident to reach a .212 BAC. Brewer testified that, based on his calculations, Helton must have consumed more than the amount of beer testimony had suggested in order to reach a .212 level. Brewer also stated that Helton's approximate BAC during the time he was at The Getaway would have been between .18 and .20, and that Helton would have been grossly intoxicated and exhibiting symptoms of intoxication.

The jury returned a verdict for Respondents in the amount of $8,000,000 for Hartfield and $2,000,000 for Hartfield's father. The court then conducted a hearing to determine whether the corporate veil of The Getaway could be pierced. The trial court issued an order piercing the corporate veil thereby making Shou Mei Morris and The Getaway (Appellants) liable in the amount awarded by the jury. This appeal followed.

## ISSUES

I. Did the trial court err in admitting the testimony of Brewer?

II. Did the trial court err in failing to direct a verdict in favor of The Getaway?

III. Did the trial court err in charging the jury statutory inferences from the criminal statute on driving under the influence?

IV. Did the trial court err in failing to charge the jury that the plaintiff must prove Helton was visibly intoxicated at The Getaway?

V. Did the trial court err in instructing the jury that The Getaway is liable if employees should have known Helton was intoxicated?

VI. Did the trial judge err in piercing the corporate veil of The Getaway?

## LAW/ANALYSIS

### I. Brewer's Testimony

▇▇▇ Appellants argue the trial court erred in admitting the testimony of Brewer. We disagree.

▇▇▇ The admission of evidence is within the sound discretion of the trial judge and will not be reversed absent a clear abuse of discretion. *See Hofer v. St. Clair,* 298 S.C. 503, 513, 381 S.E.2d 736, 742 (1989). "An abuse of discretion occurs when the ruling is based on an error of law or a factual conclusion without evidentiary support." *Conner v. City of Forest Acres,* 363 S.C. 460, 467, 611 S.E.2d 905, 908 (2005). Where a party calls an expert, the expert may testify as to his opinion, but his opinion must be based upon facts proven at

trial. *See Gathers By and Through Hutchinson v. S.C. Elec. & Gas Co.,* 311 S.C. 81, 82–83, 427 S.E.2d 687, 688–89 (Ct.App. 1993). A party may ask a hypothetical question of an expert, but the hypothetical must be based on facts supported by the evidence. *Id.* at 82, 427 S.E.2d at 688.

At trial, Appellants objected to the introduction of Brewer's testimony as speculative. Appellants contend that Hartfield did not establish sufficient facts for the expert to give an opinion as to Helton's sobriety when he was at The Getaway. The court of appeals addressed a similar argument in *Gathers.* In *Gathers,* the plaintiff was electrocuted when he touched a copper water pipe under his home, and plaintiff's counsel called an expert who, based on a hypothetical question, theorized that a defect in the defendant's service line caused the pipe to become electrified. *Id.* The defendant argued that the testimony should have been excluded because there was not a sufficient factual foundation upon which to base the opinion. *Id.* The court of appeals found no error in admitting the testimony stating:

> [C]ounsel may rely upon circumstantial evidence to prove an essential fact in framing a hypothetical question. Deciding whether a conclusion assumed in the hypothetical is at least reasonably supported by circumstantial evidence is a question of law for the court. If circumstantial evidence reasonably supports the assumptions, whether the evidence actually establishes the assumed facts becomes a question of fact for the trier of fact.

*Id.* at 83, 427 S.E.2d at 688–89.

In the present case, the circumstantial evidence presented by Respondents was sufficient to support Brewer's opinions. As outlined above, Respondents established a general timeline of Helton's activities on the day of the accident. Respondents introduced evidence showing Helton's BAC at the time of the accident and elicited testimony that Helton left a voice message just prior to the accident in which he sounded intoxicated. Respondents also called witnesses who testified concerning the approximate time Helton left The Getaway and the amount of alcohol he consumed between leaving The Getaway and the time of the wreck. We find that this evidence provided reasonable support for Brewer's testimony. Though

Respondents' case was based on circumstantial evidence, Respondents sufficiently developed the facts to form the basis of Brewer's testimony. Hence, the trial court did not err in admitting Brewer's testimony.

## II. Directed Verdict

■ Appellants argue Respondents did not meet their burden to establish that the employees of The Getaway "knowingly" sold beer to an intoxicated person. Consequently, Appellants contend the trial court erred in refusing to direct a verdict for Appellants. We disagree.

■ In ruling on a motion for a directed verdict, the trial court must view the evidence in the light most favorable to the nonmoving party. *See Sabb v. S.C. State Univ.*, 350 S.C. 416, 427, 567 S.E.2d 231, 236 (2002) (citation omitted). A motion for a directed verdict goes to the entire case and may be granted only when the evidence raises no issue for the jury as to liability. *See Carolina Home Builders, Inc. v. Armstrong Furnace Co.*, 259 S.C. 346, 358, 191 S.E.2d 774, 779 (1972). This Court will reverse the trial court's rulings on directed verdict motions only where there is no evidence to support the rulings or where the rulings are controlled by an error of law. *See Hinkle v. National Cas. Ins. Co.*, 354 S.C. 92, 96, 579 S.E.2d 616, 618 (2003) (citation omitted).

S.C.Code Ann. § 61–4–580 (2009) provides in part that "[n]o holder of a permit authorizing the sale of beer or wine or a servant, agent, or employee of the permittee may knowingly commit any of the following acts upon the licensed premises covered by the holder's permit: ... (2) sell beer or wine to an intoxicated person...."

In *Daley v. Ward,* 303 S.C. 81, 399 S.E.2d 13 (Ct.App.1990), the court of appeals established that a third party injured by actions of an intoxicated person served in violation of the earlier version of section 61–4–580 may pursue a civil action against the vendor. *Daley,* 303 S.C. at 84, 399 S.E.2d at 14. The court further allowed that an injured third party may show that the alleged violators knowingly served alcohol to an intoxicated person or were confronted with such information, from the person's appearance or otherwise, as would lead a

prudent man to believe that the person was intoxicated. *See id.* at 86, 399 S.E.2d at 15.

In *Daley,* the court of appeals considered whether or not a trial judge should have granted a motion for directed verdict. *Id.* at 84, 399 S.E.2d at 15. The evidence in *Daley* was that the driver had nine twelve-ounce cans of beer over the previous four or five hours, did not recall drinking beer at any other establishment that evening, and officers indicated they believed the driver was intoxicated immediately after the accident. *Id.* at 83, 399 S.E.2d at 14. The court of appeals held there was no error in denying the directed verdict motion, noting "[t]here was more than ample evidence that Ward was intoxicated at the time of the accident and the jury could have easily concluded he was just as intoxicated at the time he was served his last beer at the [bar]." *Id.* at 84–85, 399 S.E.2d at 15.

In the present case, Respondents established a timeline of Helton's actions and that Helton had a .212 BAC only fifty to ninety-five minutes after leaving The Getaway. Keller testified he had no doubt that Helton was under the influence of alcohol when he left a voice message for his wife minutes before the accident. Brewer testified that, using retrograde extrapolation, a man of Helton's approximate weight would have exhibited outward symptoms of intoxication. Given the deferential standard of review with regard to motions for directed verdict, we find that Respondents presented sufficient evidence for a jury question. The trial court therefore did not err in denying Appellants' motion.

### III. Statutory Inference

Appellants contend the trial court erred in allowing a permissive inference from the driving under the influence (DUI) statute. Appellants argue that the trial judge's instruction on the inference for DUI was error for two reasons: (1) the charge was not relevant to a civil case and (2) there was no showing that the blood and urine samples were handled in accordance with procedures approved by SLED, per the requirements of the implied consent statute. We disagree.

At the close of the trial, the judge charged the jury in pertinent part:

Now, in proving the violation of this statute the plaintiff must prove that the defendant or both defendants or their employees violated the statute, they sold alcoholic beverages to a person that they knew or should have known was intoxicated at the time they sold the alcoholic beverages to that person. If that is proven to you by the greater weight or preponderance of the evidence, then I would charge you that an intoxicated person is a person who has drunk a sufficient quantity of an intoxicating beverage to appreciably impair the normal control of their bodily or mental functions.

Now, in this state at the time there was a permissive inference that a person was under the influence of alcohol when that person has a blood alcohol level of .10 percent or greater. Now, you have to determine if it's been established at the time that the alcohol was served and the person was intoxicated. Now, this inference is just an inference to be taken by you along with any other evidence of intoxication that you find in the case.

 Because South Carolina does not have a Dram Shop Act, our civil remedy arises out of criminal statutes. *See Tobias v. Sports Club, Inc.*, 332 S.C. 90, 92, 504 S.E.2d 318, 319 (1998) (holding injured third parties may bring a negligence suit against the tavern owner based on a violation of the alcohol control statutes). Similarly, a trial judge in a civil action should be able to aid the jury in assessing whether a bartender knowingly sold alcohol to an intoxicated individual by charging the jury on permissible inferences regarding "being under the influence of alcohol" under our criminal laws. The civil remedy is predicated on criminal statutes, thus it should be permissible for a trial judge to charge on the permissive inference of intoxication under our criminal statutes. Hence, the charge as given was relevant in a civil case and the trial court committed no error in charging the permissible inference.

 Also, Appellants' contention that S.C.Code Ann. § 56–5–2950 (Supp.2009) forbids entrance of Helton's BAC is misplaced. Section 56–5–2950 is designed to ensure procedural due process in a criminal trial. *See Taylor v. S.C. Dep't of Motor Vehicles*, 368 S.C. 33, 37, 627 S.E.2d 751, 753 (Ct.App.

2006) ("The implied consent laws of this State attempt to balance the interest of the State in maintaining safe highways with the interest of the individual in maintaining personal autonomy free from arbitrary or overbearing State action."). Therefore, if someone's BAC was obtained in violation of this statute, it only affects admissibility in a criminal proceeding. Because the present matter is a civil case, the procedural due process concerns of a criminal case are not present and section 56–5–2950 is inapplicable. So long as a sufficient chain of custody exists to authenticate the evidence in a civil case, this type of evidence is admissible. Thus, the trial court committed no error in allowing evidence of Helton's BAC.

## IV. Visibly Intoxicated

■■■ Appellants contend that the trial court erred in failing to adopt their requested instruction to the jury that "[b]efore you can find the defendant liable, the plaintiff must prove that Hoyt Helton was visibly intoxicated." We disagree.

As noted above, the court of appeals established in *Daley* that a third party injured by the actions of an intoxicated person served in violation of the earlier version of section 61–4–580 may pursue a civil action against the vendor. *Daley*, 303 S.C. at 84, 399 S.E.2d at 14. Section 61–4–580 prohibits the holder of a permit authorizing the sale of beer or wine from knowingly selling beer or wine to an intoxicated person. S.C.Code Ann. § 61–4–580 (2009). The statute does not contain a requirement that the intoxicated person be visibly intoxicated, only that a person "knowingly" sell beer or wine to an intoxicated person. Consequently, the trial court's refusal to adopt Appellants' proposed instruction was not error.

Appellants would have this Court adopt a new standard allowing for liability only where the intoxicated person is visibly intoxicated. We see no reason to adopt Appellants' proposal. Though the present case focused on the visible symptoms exhibited by Helton while at The Getaway, other cases under section 61–4–580 might concern knowledge acquired through a different medium.[2]

---

2. The second part of Appellants' requested charge is that a high alcohol reading alone is not sufficient to establish liability. As noted above, we

## V. "Should have known"

Appellants contend that the trial court erred in instructing the jury that Respondents may meet their burden of proof by showing that Appellants' employees served alcohol to a person they "should have known" was intoxicated. The trial court's instruction to the jury included, "The plaintiff has to prove under the statute . . . that businesses that sold the alcohol knew or should have known he was intoxicated." Appellants argue that this instruction lessened the proof required under the law and was rejected by the court of appeals in *Daley.* We disagree.

In *Daley,* the plaintiff in a suit under the predecessor to section 61–4–580 argued that the trial court erred in denying her requested charge that her burden was to prove that the defendants "knew or should have known that the patron was in an intoxicated condition at the time he or she was served." *Daley,* 303 S.C. at 85, 399 S.E.2d at 15. The court of appeals found no error in the trial court's decision denying the re-quested charge, but allowed that the plaintiff would have been entitled to an instruction as to a "reasonable person" standard. *Id.* at 86–87, 399 S.E.2d at 15–16. The proper standard, as stated by the court of appeals is "whether the bartenders negligently served alcoholic beverages to a person who, by his appearance or otherwise, would lead a prudent man to believe that person was intoxicated." *Id.* at 87, 399 S.E.2d at 16. In our view, "knew or should have known" is an articulation of an objective "reasonable person" standard. We see no difference between the "reasonable person" and "should have known" standards. Moreover, this instruction did not lessen the proof required under our law. Thus, the trial court did not err in instructing "knew or should have known."

## VI. Piercing the Corporate Veil

Appellants argue that Respondents failed to prove the fun-damental unfairness in recognizing the corporate entity. We disagree.

---

believe the trial court's instruction with regard to the requirement that the plaintiff prove the Appellants "knowingly" sold beer or wine to an intoxicated person obviates the need for this instruction.

We affirm the trial court's decision allowing Respondents to pierce the corporate veil pursuant to Rule 220(b), SCACR, and the following authorities: *Sturkie v. Sifly,* 280 S.C. 453, 457–58, 313 S.E.2d 316, 318 (Ct.App.1984) (The second part of the two-pronged test used to determine whether a corporate entity should be disregarded "requires that there be an element of injustice or fundamental unfairness if the acts of the corporation be not regarded as the acts of the individuals."); *Multimedia Pub. of S.C., Inc. v. Mullins,* 314 S.C. 551, 556, 431 S.E.2d 569, 573 (1993) (citation omitted) ("The essence of the fairness test is simply that an individual businessman cannot be allowed to hide from the normal consequences of carefree entrepreneuring by doing so through a corporate shell.").

### CONCLUSION

For the aforementioned reasons, the decision of the trial court is affirmed.

WALLER, BEATTY and KITTREDGE, JJ., concur.

PLEICONES, J., dissenting in a separate opinion.

Justice PLEICONES.

I respectfully dissent. I believe the trial court erred in denying Appellants' motion for a directed verdict and, even assuming the motion was properly denied, erred in charging the jury. Consequently, I would reverse.

### I. Directed Verdict

To meet his burden of proof, Respondent was required to show that the employees of The Getaway "knowingly" sold alcohol to an intoxicated person. In my view, Respondent's case was based, not on evidence, but on speculation, and was not sufficient to withstand Appellants' motion for a directed verdict.

Regarding a motion for directed verdict, this Court has held:

The issue must be submitted to a jury whenever there is material evidence tending to establish the issue in the mind of a reasonable juror. However, this rule does not author-

ize submission of speculative, theoretical and hypothetical views to the jury. We have repeatedly recognized that when only one reasonable inference can be deduced from the evidence, the question becomes one of law for the court. A corollary of this rule is that verdicts may not be permitted to rest upon surmise, conjecture or speculation.

*Hanahan v. Simpson,* 326 S.C. 140, 149, 485 S.E.2d 903, 908 (1997) (citations omitted).

During Respondent's case, Respondent presented the following evidence to demonstrate that employees of The Getaway "knowingly" sold alcohol to an intoxicated person: Helton had a .212 BAC 50–90 minutes after leaving The Getaway, Helton typically sipped his beer, Helton consumed one beer at the Carolina Drive-in, and Helton consumed three beers at The Getaway.

Respondent presented no direct evidence showing that Appellants' employees "knowingly" served alcohol to an intoxicated person, and instead relied on Dr. Brewer's testimony. In fact, the only direct evidence regarding Helton's visit to The Getaway presented during the trial was that Helton was not exhibiting symptoms of intoxication.

In place of direct evidence, Respondent presented the testimony of Dr. Brewer. Using retrograde extrapolation, Dr. Brewer opined that a hypothetical man of Helton's approximate weight would have been exhibiting outward symptoms of intoxication when he was served the third beer at The Getaway. Based on the assumption that the hypothetical man consumed three beers at The Getaway, one beer at the Carolina Drive-in, and no other alcohol from the time he entered the Getaway until the crash, Dr. Brewer concluded that the man would have had to have consumed alcohol prior to arriving at The Getaway. Dr. Brewer then opined that, based on these assumptions, the man arrived at The Getaway with a .10 or .12 BAC. Finally, Dr. Brewer concluded that, under these assumed facts, the hypothetical person may have been exhibiting visible symptoms of intoxication when he was served the third beer at the Getaway.

Dr. Brewer's testimony, based on a hypothetical person of Helton's approximate weight, was carefully worded:

[B]ased on my calculations he would certainly have over a .10, a .12 just having that first beer, if we're making the assumption that's all he had, was those four beers.... As he is being given more beer he *should be* showing outward signs of great impairment because his alcohol concentration is going up. So, you know, *I think that's general,* but *maybe* at first his speech may not be that impaired after three or four beers, but with each beer he certainly would be becoming more and more impaired.

(emphasis supplied).

Given the evidence, in order for the jury to find in favor of Respondent, it must find (1) that Dr. Brewer's assumption that Helton did not consume any alcohol after leaving the Getaway other than one beer at the Carolina Drive-in, was true, though Respondent provided no evidence to account for the time between Helton leaving the Getaway and arriving at the Carolina Drive-in, which could have been more than a half an hour; (2) that the hypothetical man on which Dr. Brewer based his testimony accurately reflected how Helton would react to alcohol, despite the fact that Helton weighed more than the hypothetical man and was an alcoholic; and (3) that Helton did in fact exhibit the outward symptoms that Dr. Brewer opined the hypothetical man "should" have been exhibiting.

In my view, only by piling inference upon inference could the jury conclude that the employees of the Getaway "knowingly" served alcohol to an intoxicated person. A plaintiff is not required to present direct evidence in order to make a case, but verdicts may not rest on speculation. *See Hanahan,* 326 S.C. at 149, 485 S.E.2d at 908.

In upholding the trial court's decision to deny a directed verdict, the majority cites to *Daley v. Ward,* 303 S.C. 81, 399 S.E.2d 13 (Ct.App.1990). In *Daley,* the Court of Appeals affirmed the denial of a directed verdict in a case in which no direct evidence was presented to show that the defendant knowingly served an intoxicated person. However, *Daley* presented a much stronger set of facts than the instant case. The plaintiff was injured when a driver struck his car. The plaintiff and the investigating officer testified that the driver was intoxicated immediately after the accident, and the driver

agreed. The driver had left the bar 15–20 minutes before the accident and had spent the previous 4–5 hours at the bar drinking nine, twelve-ounce cans of beer. The driver did not recall drinking beer at any other bar that evening.

This, in my view, constitutes a much stronger set of facts than the instant case. Helton visited not one, but three different bars on the night of the accident. The Getaway was not his last stop and the accident occurred 50–90 minutes after Helton left The Getaway. Given these facts, I believe a jury verdict for Respondent can only be based on speculation and the trial court erred in denying Appellants' motion for directed verdict.

## II. Statutory Inference

Even assuming the judge properly submitted the case to the jury, I believe the trial judge erred in instructing the jury that it could consider the statutory inference from the driving under the influence (DUI) statute in deciding liability. In my view, the inference is not relevant to the question before the jury—whether the Appellants' employees knowingly sold alcohol to an intoxicated person.

In *Suskey v. Loyal Order of Moose Lodge # 86*, 325 Pa.Super. 94, 472 A.2d 663 (Pa.Super.1984), the Superior Court of Pennsylvania upheld a lower court's decision not to include the instruction regarding whether the driver was "under the influence" in a suit against a bar owner for knowingly serving an intoxicated person. The court noted that "being 'under the influence' and 'visibly intoxicated' relate to different characteristics of ability and control as opposed to appearance." [3] *Id.* at 99–100, 472 A.2d at 666. I agree with the reasoning of the Pennsylvania court. Whatever standard the General Assembly may have chosen to set with regard to a person's ability or inability to lawfully operate a motor vehicle, it is not relevant to the question whether a person is intoxicated such that the employees knowingly served an intoxicated person.

Moreover, in my view, to apply the criminal inference in a civil matter would run contrary to the intent of the General

---

**3.** Though *Suskey* concerned a mandatory inference, rather than the permissible inference in the instant case, there is no difference for purposes of my analysis.

Assembly. The criminal statute, as it existed at the time of the accident, provided as follows:

> (b) *In the criminal prosecution* for a violation of [statutes] relating to driving a vehicle under the influence of alcohol, drugs, or a combination of them, the alcohol concentration at the time of the test, as shown by chemical analysis of the person's breath or other body fluids, gives rise to the following:
>
> . . .
>
> (3) If the alcohol concentration was at that time ten one-hundredths of one percent or more, it may be inferred that the person was under the influence of alcohol.

S.C.Code Ann. § 56–5–2950 (2003) (emphasis added).

The express language of the statute specifies that the inference applies in a criminal prosecution and to apply the inference in a civil case contradicts the statute. *See Wood v. Brown,* 20 N.C.App. 307, 201 S.E.2d 225 (1973) ("By the express language of the statute . . . it applies '(i)n any criminal action'. . . . By no sound exercise of statutory construction can we take such specific language to authorize the application of the statutory presumption in civil actions."). I note that my position is in accord with that of the majority of other jurisdictions that have dealt with this issue. *See* 16 A.L.R.3d 748, § 9.

Furthermore, I believe the charge was prejudicial. The instruction as to whether Helton was "under the influence" followed on the heels of the trial court's discussion of intoxication. Additionally, the trial court failed to adequately distinguish between "intoxication" and "under the influence." Given that evidence established Helton's BAC at the time of the accident, and that Dr. Brewer opined as to Helton's presumed BAC during his time at The Getaway, both of which were in excess of the .10 BAC referenced in the charge, I find that the instruction prejudiced Appellants.

In my view, the trial court erred in instructing the jury with regard to a presumption that a driver is under the influence and Appellants were prejudiced by the error. I would therefore reverse.

For the reasons stated above, I would reverse the decision of the trial court.